1  Louis E. Kempinsky (State Bar No. 90068)
   *lek@vrmlaw.com*
2  VALENSI ROSE, PLC
   1888 Century Park East, Suite 1100
3  Los Angeles, CA 90067
   Telephone: (310) 277-8011
4  Facsimile: (310) 601-7009

5  Attorneys for Plaintiff
   David R. Hilty

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                        WESTERN DIVISION

10 DAVID R. HILTY, individually, and
   derivatively on behalf of GEISHA HOUSE,
11 LLC, a California limited liability company,
   and GEISHA SANTA ANA, LLC, a
12 California limited liability company,

13                    Plaintiff,

14                    vs.

15 LONNIE MOORE, an individual; MICHAEL
   ROBERT CARRI a/k/a MICHAEL ROBERT
16 MALIN a/k/a MIKE BOOGIE a/k/a MIKE
   BOOGIE MALIN, an individual; 2HYPE
17 PRODUCTIONS, INC., a California
   corporation; LTM CONSULTING, INC., a
18 California corporation; MOORE & MALIN
   ENTERPRISES, LLC.; a California limited
19 liability company; JAMES MCDONALD, an
   individual; ROBERT PAU, an individual; and
20 DOES 1 through 10, inclusive,

21                    Defendants,

22                    – and –

23 GEISHA HOUSE, LLC, a California limited
   liability company, and GEISHA SANTA
24 ANA, LLC, a California limited liability
   company,

25                    Nominal Defendants.

26

27

28

Case No. CV12-02089 JC6

VERIFIED COMPLAINT FOR:

(1)  SECURITIES FRAUD;
(2)  FRAUD;
(3)  BREACH OF FIDUCIARY
     DUTY;
(4)  CIVIL CONSPIRACY;
(5)  UNJUST ENRICHMENT;
(6)  ACCOUNTING;
(7)  UNFAIR COMPETITION (Cal.
     Bus. & Prof. Code § 17200, *et
     seq.*); and
(8)  APPOINTMENT OF A
     RECEIVER

DEMAND FOR JURY TRIAL

312757.1                        - 1 -

Plaintiff David R. Hilty ("Hilty"), individually, and derivatively on behalf of Geisha House, LLC ("Geisha L.A.") and Geisha Santa Ana, LLC ("Geisha Santa Ana"), hereby complains against the defendants named herein (collectively, "Defendants") and alleges as follows:

## JURISDICTION

1.     The claims asserted herein arise under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78n(a), and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder, and under California law. In connection with the acts, conduct and other wrongs complained of herein, defendants, directly and/or indirectly, used the means and instrumentalities of interstate commerce and the United States mail.  This Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. §§ 1331 and 1337.  This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

2.     This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

## NATURE OF THE ACTION

3.     This action arises from the long-running, systematic, and pervasive course of fraud, waste, mismanagement, embezzlement, and diversion of corporate assets and opportunities that, from the business's inception, has characterized the management of The Dolce Group, a conglomerate of restaurants, clubs, and hospitality consulting services formed and operated through several operating entities (the "Dolce Group Entities"), by defendants Lonnie Moore ("Moore") and Michael Robert Carri a/k/a Michael Robert Malin a/k/a Mike Boogie a/k/a Mike Boogie Malin ("Malin").

4.     Since founding The Dolce Group in 2003, Moore and Malin have used the Dolce Group Entities as their personal piggybank, siphoning off to themselves millions of dollars in corporate funds, to the detriment of the entities and their other investors.

312757.1                                          - 2 -

1   Through this and other intentional misconduct, along with their gross negligence and
2   incompetence in running the Dolce Group Entities, Moore and Malin have run several
3   of those entities into the ground.

4       5.      Plaintiff Hilty is part of the unfortunate group of investors induced by
5   Moore and Malin to invest in Dolce Group Entities.  Hilty is, and, as relevant hereto,
6   has been, a member of three of the Dolce Group Entities, Geisha L.A., Geisha Santa
7   Ana, and Dolce Group Atlanta, LLC ("Dolce Atlanta"), investing approximately $1
8   million in the aggregate in those entities.

9       6.      Since Hilty first started investing in Dolce Group Entities in 2004, he has
10   received only minimal distributions on account of his investments, Geisha Santa Ana
11   became unable to continue operating the branch of Geisha House it was formed to open
12   in Orange County, and Hilty has been told that his investment in Dolce Atlanta is
13   worthless, with each of the restaurants in Atlanta opened by that entity recently closing.

14       7.      Hilty brings this lawsuit on behalf of himself, in his individual capacity, to
15   recover for the injuries suffered by him directly, as a result of his investments in Dolce
16   Group Entities, as well as to recover for the frauds, breaches of fiduciary duties, and
17   other wrongs committed against him directly by Moore, Malin, and other Defendants
18   named herein, with whom Moore and Malin conspired in their scheme to defraud
19   investors and loot the Dolce Group Entities.

20       8.      Hilty also brings this lawsuit in a derivative capacity, on behalf of nominal
21   defendants Geisha L.A. and Geisha Santa Ana, in the right and for the benefit of those
22   entities and their members.  Hilty has standing to bring the derivative claims he asserts,
23   and any requirement of a pre-suit demand upon the entities is excused, for reasons set
24   forth in more detail below, including, without limitation, that, in light of the facts
25   alleged herein, Moore and Malin, as managing members of the entities, cannot
26   reasonably be expected to take appropriate corrective action, and any demand on them
27   to do so would manifestly be futile.

28

312757.1                                    - 3 -

9.     Notwithstanding the manifest futility of doing so, Hilty is, pursuant to Georgia limited liability company law, in conjunction with the filing of this lawsuit, making demand upon Moore and Malin, as managing members of Dolce Atlanta, that Dolce Atlanta commence litigation to, among other things, uncover and obtain recovery for the frauds, breaches of fiduciary duties, gross negligence, and other wrongs committed by Moore, Malin, and their co-conspirators against Dolce Atlanta and its investors.

10.    Hilty intends to amend this Complaint to assert derivative claims on behalf of Dolce Atlanta, if (as expected) Moore and Malin refuse the demand made upon them, or if they fail to respond within the time allowed by law, or if to await such response would result in irreparable injury.

**THE PARTIES**

11.    Plaintiff Hilty is, and at all times relevant hereto was, an individual domiciled in the State of New York.

12.    Nominal defendant Geisha L.A. is, and at all times relevant hereto was, a limited liability company organized and existing under the laws of the State of California, with its principal place of business in the State of California, County of Los Angeles.  Hilty is, and at all times relevant hereto was, a member of Geisha L.A.

13.    Nominal defendant Geisha Santa Ana is, and at all times relevant hereto was, a limited liability company organized and existing under the laws of the State of California, with its principal place of business in the State of California, County of Los Angeles.  Hilty is, and at all times relevant hereto was, a member of Geisha Santa Ana.

14.    On information and belief, defendant Moore is, and at all times relevant hereto was, an individual domiciled in the State of California, County of Los Angeles.

15.    On information and belief, defendant Malin is, and at all times relevant hereto was, an individual domiciled in the State of California, County of Los Angeles.

16.    On information and belief, defendant 2HYPE Productions, Inc. ("2HYPE") is, and at all times relevant hereto was, a corporation organized and existing under the laws of the State of California, with its principal place of business in the State of California, County of Los Angeles.

17.    On information and belief, defendant LTM Consulting, Inc. ("LTM") is, and at all times relevant hereto was, a corporation organized and existing under the laws of the State of California, with its principal place of business in the State of California, County of Los Angeles.

18.    On information and belief, defendant Moore & Malin Enterprises, LLC ("MME") is, and at all times relevant hereto was, a limited liability company organized and existing under the laws of the State of California, with its principal place of business in the State of California, County of Los Angeles.

19.    On information and belief, defendant Malin is the alter ego of defendants 2HYPE and MME, and is legally responsible for the debts and obligations of 2HYPE and MME in that, among other things: (a) Malin controls, dominates, manages, and operates 2HYPE and MME as his alter egos; (b) 2HYPE and MME have failed to comply with, or observe, the formalities of corporate formation and/or operation; (c) 2HYPE and MME have each operated as a mere shell or sham corporation without sufficient capital assets to meet their debts, obligations, or liabilities as they come due; (d) there was a commingling of assets between and among Malin, 2HYPE, and MME; and (e) the individuality of 2HYPE and MME is a sham and a fiction and should be disregarded, because to respect the corporate separateness of these entities would, under the circumstances, operate as an injustice.

20.    On information and belief, defendant Moore is the alter ego of defendants LTM and MME, and is legally responsible for the debts and obligations of LTM and MME in that, among other things: (a) Moore controls, dominates, manages, and operates LTM and MME as his alter egos; (b) LTM and MME have failed to comply

with, or observe, the formalities of corporate formation and/or operation; (c) LTM and MME have each operated as a mere shell or sham corporation without sufficient capital assets to meet their debts, obligations or liabilities as they come due; (d) there was a commingling of assets between and among Moore, LTM, and MME; and (e) the individuality of LTM and MME is a sham and a fiction and should be disregarded, because to respect the corporate separateness of these entities would, under the circumstances, operate as an injustice.

21.    On information and belief, defendant James McDonald ("McDonald") is, and at all times relevant hereto was, an individual domiciled in the State of California, County of Los Angeles.  McDonald is the Controller of The Dolce Group.

22.    On information and belief, defendant Robert Pau ("Pau," and collectively with Moore, Malin, and McDonald, the "Individual Defendants") is, and at all times relevant hereto was, an individual domiciled in the State of California, County of Los Angeles.  Pau is the Director of Operations of The Dolce Group.

23.    Hilty is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names pursuant to Local Rule 19-1.  On information and belief, each such fictitious defendant was in some way responsible for, participated in, or contributed to the matters and things of which Hilty complains herein, and in some fashion has legal responsibility therefor.  When the true names and capacities of such defendants and their responsibility for, participation in, and/or contribution to the matters and things alleged herein are ascertained by Hilty, Hilty will seek leave to amend this Complaint to allege the same.

/ / /

/ / /

/ / /

/ / /

## GENERAL ALLEGATIONS

### Moore And Malin Form The Dolce Group And, In Less Than A Decade, Run Several Restaurants And Clubs Into The Ground

24.     On information and belief, defendants Moore and Malin entered the hospitality business in Los Angeles in 2001, opening a tapas lounge on Santa Monica Boulevard called Belly.  On information and belief, Belly closed just a few short years later, in 2004.

25.     Belly's closing in 2004, just a few years after it opened, established the paradigm for ventures founded by Moore and Malin.  On information and belief, in the decade since Moore and Malin founded Belly, several other of their restaurant and club ventures have closed, and others have had to be sold off or otherwise disassociated with The Dolce Group, due to, among other things, Moore and Malin's fraud, mismanagement, and diversion to themselves of corporate assets and opportunities.

26.     On information and belief, Moore and Malin together formed The Dolce Group in 2003, opening their first venture under that umbrella, an Italian restaurant in Hollywood called Dolce Enoteca e Ristorante.

27.     On information and belief, The Dolce Group has, since 2003, been the sole or principal vehicle and/or branding, advertising, and/or marketing, and promotion platform through which Moore and Malin have solicited investments in, opened, promoted, and operated restaurant and club ventures.

28.     On information and belief, since 2003, approximately sixteen  restaurants and clubs have been opened under the Dolce Group umbrella, as follows:

     a.     three branches of Geisha House (the original in Hollywood and branches in Atlanta and Santa Ana);

     b.     four branches of Dolce Enoteca, an Italian restaurant;

1         c.     a sister restaurant to the original Dolce Enoteca called Bella Cucina

2  Italiana, which was also located in Hollywood and which was subsequently renovated

3  and reconcepted in 2010 to become Angels and Kings, a rock and roll bar;

4         d.     Ten Pin Alley, a bowling alley and lounge in Atlanta;

5         e.     Les Deux, a nightclub in Hollywood;

6         f.     three branches of Ketchup, a modern diner brand;

7         g.     Rare 120° and Johnny Smalls, two restaurants at the Hard Rock

8  Hotel & Casino in Las Vegas; and

9         h.     The Burgundy Room, a multipurpose venue in Miami.

10     29.    On information and belief, of the sixteen restaurant and club ventures

11  described above, only four are still in business and affiliated with The Dolce Group: the

12  Los Angeles branch of Geisha House ("Geisha House"); Angels and Kings; the

13  Washington, D.C. branch of Ketchup; and Johnny Smalls).  On information and belief,

14  most of the other ventures have been closed entirely, and the others have been sold off

15  or otherwise disassociated from The Dolce Group.

**Moore And Malin Obtain Millions Of Dollars From Passive Investors In The Dolce Group Entities, While Excluding Those Investors From The Entities' Management**

19     30.    Geisha L.A., Geisha Santa Ana, Dolce Atlanta, and, on information and

20  belief, the other Dolce Group Entities, were formed as limited liability companies

21  ("LLCs"), each designed to correspond to a single or at most a few specific restaurant or

22  club projects.  A major source of financing for these projects was the infusion of capital

23  contributions to the respective entities from passive investors acquiring membership

24  interests in the Dolce Group Entities ("LLC Interests").

25     31.    To induce investors to provide capital to the Dolce Group Entities

26  (including Geisha L.A., Geisha Santa Ana, and Dolce Atlanta), Moore and Malin

27  solicited investments through, among other means, offerings to members of the public

28

LLC Interests ("Offerings").  In connection with each Offering, Moore and Malin disseminated to members of the public and/or caused to be disseminated to members of the public various documents and information concerning the Offering and the Dolce Group Entity at issue, including, among other things, confidential business plans, summaries and/or other memoranda concerning the Offering, and copies of the subscription agreement and operating agreement for the entity (collectively, "Offering Materials").

32.     In disseminating the Offering Materials and other documents and information for the purpose of soliciting, from Hilty and other investors, investments in the Dolce Group Entities (including Geisha L.A., Geisha Santa Ana, and Dolce Atlanta), Moore and Malin directly and/or indirectly used the means and instrumentalities of interstate commerce (including email and interstate telephone calls) and the United States mail.

33.     Moore and Malin are, and at all times relevant hereto were, managing members of the Geisha L.A., Geisha Santa Ana, Dolce Atlanta, and, on information and belief, the other Dolce Group Entities ("Managing Members").  While a third person, Shereene Arazm ("Arazm"), is also a managing member of Geisha L.A., Geisha Santa Ana, and Dolce Atlanta, under those entities' operating agreements, Moore and Malin, on information and belief, *de facto* controlled and dominated the management of those entities.

34.     Hilty and, on information and belief, other members of Geisha L.A., Geisha Santa Ana, and Dolce Atlanta, besides Moore and Malin, are non-managing members of their respective entities ("Non-Managing Members").

35.     Moore and Malin's positions as Managing Members of the Dolce Group Entities provided them with the opportunity to, and they did in fact, control and dominate the operations, activities, and finances of the Dolce Group Entities, to the exclusion and detriment of both the Non-Managing Members and Arazm.

36.     On information and belief, over the years, Moore and Malin have obtained millions of dollars in capital contributions to the Dolce Group Entities from Non-Managing Members, all while excluding the Non-Managing Members from the management of the Dolce Group Entities and, in addition, using their position of superior influence and power to personally enrich themselves at the expense of the Dolce Group Entities and, in particular, the Non-Managing Members.

37.     On information and belief, The Dolce Group, from the beginning, was intended by Moore and Malin to be, and was in fact used by them as, a vehicle for personally enriching themselves at the expense of the Dolce Group Entities and their passive investors, the Non-Managing Members.

**Hilty Invests Approximately $1 Million In Dolce Group Entities, Becoming A Non-Managing Member Of Geisha L.A., Geisha Santa Ana, And Dolce Atlanta**

38.     In or around December 2003, Geisha L.A. commenced an Offering of LLC Interests in that entity, at the price of $50,000 per unit, with each unit representing a one percent (1%) membership interest in the entity.

39.     On or about December 15, 2004, Hilty acquired a one-half percent (0.5%) non-managing membership interest in Geisha L.A.

40.     Hilty paid $25,000 to acquire this membership interest in Geisha L.A., which was accomplished as part of a larger wire transfer made on or about November 29, 2004.

41.     Around mid-2005, Dolce Atlanta commenced an Offering of LLC Interests in that entity, at the price of $200,000 per unit, with each unit representing a two percent (2%) membership interest in the entity.

42.     On or about, January 5, 2007, Hilty acquired a nine-and-one-half percent (9.5%) membership interest in Dolce Atlanta.

312757.1                                              - 10 -

43.     Hilty paid $950,000 to acquire this membership interest in Dolce Atlanta, which was accomplished as part of a larger wire transfer made on or about January 24, 2006.

44.     In or around March 2008, Geisha Santa Ana commenced an Offering of LLC Interests in that entity, at the price of $30,000 per unit, with each unit representing a one percent (1%) ownership interest in the entity.

45.     On or about January 20, 2009, Hilty acquired a five percent (5%) membership interest in Geisha Santa Ana.

46.     Hilty received this membership interest in Geisha Santa Ana as consideration for his previous, and continuing, investment in the Dolce Atlanta LLC Interests.

47.     Hilty's acquisitions of his interests in Geisha L.A., Dolce Atlanta, and Geisha Santa Ana are hereafter collectively referred to as the "Investments."

**From The Inception Of The Dolce Group, Moore, Malin, And Their Co-conspirators Engage In A Continuous Scheme To Loot The Dolce Group Entities And Their Investors, And They Otherwise Grossly Mismanage The Dolce Group Entities**

48.     On information and belief, since the time of, or shortly following the time of, the formation of The Dolce Group in 2003, Moore and Malin have been engaged in a continuous and systematic scheme and course of conduct (which scheme later came to include such co-conspirators as McDonald and Pau) to loot the Dolce Group Entities and defraud the investors in those entities, particularly the class of Non-Managing Members of the Dolce Group Entities (including, without limitation, Geisha L.A., Geisha Santa Ana, and Dolce Atlanta).

49.     On information and belief, Moore and Malin, individually, together, and with certain co-conspirators, including McDonald and Pau, created an off-the books "ledger" where they would keep track of the monies they diverted or misappropriated

1    from their restaurants and clubs. They would then divide those monies among

2    themselves and, in some cases, with their co-conspirators.

3        50.    On information and belief, Moore and Malin, individually, together, and

4    with certain co-conspirators, including McDonald and Pau, created and managed a

5    PayPal account through which they would collect monies from the sale of restaurant gift

6    cards, discount coupons, and other merchandise. Rather than deposit these monies into

7    proper restaurant accounts, Moore and Malin, with the assistance of their co-

8    conspirators, including McDonald, hid these monies from Hilty and their other investors

9    by falsifying accounting records and manipulating the books and ledgers of various

10   Dolce Group Entities. On information and belief, Moore and Malin spilt these monies

11   between themselves and, in some cases, with certain of their co-conspirators, by

12   depositing monies siphoned away from entities in which Hilty has an ownership interest

13   into individual accounts owned by Moore and Malin, as well as by their companies

14   LTM, 2HYPE and/or MME.

15       51.    On information and belief, Moore and Malin, individually, together, and

16   with certain co-conspirators, including McDonald and Pau, entered into unauthorized

17   and off-the-books side deals with multiple distributors and vendors to exclusively sell

18   certain products in their restaurants and clubs in exchange for a commission on sales

19   and/or a flat fee. For example, Moore and Malin, with the assistance and aid of their co-

20   conspirators, entered into exclusive distribution agreements with Fiji Water and Red

21   Bull, among other companies, whereby Moore and Malin agreed to sell only Fiji brand

22   bottled water, Red Bull energy drink, and other products on an exclusive basis in certain

23   of Moore and Malin's restaurants and clubs. In exchange for these exclusivity

24   arrangements, Fiji Water, Red Bull, and other companies would send rebate checks

25   payable to Malin's privately held company, 2HYPE, Moore's privately held company,

26   LTM, and/or to MME. Rather than deposit these rebate checks into the proper

27   restaurant accounts, Moore and Malin, with the assistance of McDonald and Pau, would

28

312757.1                              - 12 -

1   add these monies to their "ledger" and split the funds between themselves.  Also, in

2   exchange for the exclusive right to distribute their products at Geisha House and other

3   venues owned in part by Hilty, various distributors gave Moore and Malin

4   complimentary airline tickets and all-expenses-paid trips and vacations.  On information

5   and belief, Moore and Malin never accounted for these gifts on the company books.

6        52.    On information and belief, Moore and Malin, individually, together, and

7   with certain co-conspirators, including McDonald and Pau, conducted similar off-the-

8   books schemes with respect to their automated teller machine ("ATM") vendors at their

9   various establishments.  The fees that Moore and Malin collected from the banks with

10  which they contracted for ATM services were not properly deposited into the

11  restaurants' accounts that were maintained by McDonald, but rather were split between

12  Moore and Malin, their co-conspirators, and the companies they controlled, including

13  2HYPE, LTM, and MME.

14       53.    On information and belief, Moore and Malin, individually, together, and

15  with certain co-conspirators, including McDonald and Pau, also diverted or

16  misappropriated money from Hilty and other investors in their restaurants and clubs by

17  pocketing cash and checks payable to them individually, or to their alter ego entities

18  2HYPE, LTM, and/or MME, or payable to "cash," which monies they collected from

19  various party promoters and film/video producers.  Certain promoters agreed to pay

20  Moore and Malin and their co-conspirators a cut of the cover charge the restaurants and

21  clubs would charge patrons at the door.  Similarly, certain producers agreed to pay

22  Moore and Malin and certain of their co-conspirators, including Pau, a location fee for

23  allowing the production to shoot video and/or film at the restaurants and clubs owned

24  and operated by Moore and Malin.  Rather than deposit these monies from the

25  promoters and producers into the proper restaurant accounts, Moore and Malin

26  instructed other individuals, including McDonald and Pau, not to "ring up" certain

27

28

312757.1

- 13 -

1  transactions, but instead to add these monies to their illegal "ledger," to be shared

2  between themselves and certain of their co-conspirators.

3       54.   On information and belief, Moore and Malin, individually, together, and

4  with certain co-conspirators, including McDonald and Pau, entered into unauthorized

5  barter transactions with multiple patrons, vendors, and distributors.  Without getting

6  permission from Hilty or other investors, Moore and Malin would trade the services at

7  their restaurants and clubs (*e.g.*, free or discounted meals) for personal favors and gifts.

8  On at least one occasion, Moore and Malin agreed to provide American Airlines

9  representatives with free and discounted meals and drinks and restaurant gift certificates

10  in exchange for two (2) round trip, business-class tickets on American Airlines to any

11  American Airline destination in Europe.  Rather than properly account for this

12  transaction in the restaurants' books (which were maintained and allegedly controlled by

13  McDonald), Moore and Malin, with the assistance of McDonald, used the airline tickets

14  for a personal vacation.  Similarly, Moore and Malin agreed to host private events at the

15  Geisha House (and other locations partly owned by Hilty) for the benefit of their friends

16  and associates.  On information and belief, Malin also donated services and assets of

17  Geisha L.A. to benefit his personal relationships.  On information and belief, those

18  events and donations were not properly accounted for, thereby allowing Moore and

19  Malin to individually profit at the expense of Geisha L.A. and its investors, including

20  Hilty.

21       55.   On information and belief Moore, individually, together, and with certain

22  co-conspirators, agreed with the landlord of his residence to pay half of his monthly rent

23  with Dolce Group gift cards, which were redeemable at restaurants, such as Geisha

24  House, in which Hilty has a financial interest.  Moore never reimbursed Hilty's

25  restaurants when the gift cards were tendered there in exchange for food and/or alcohol.

26  Similarly, Malin has made unauthorized charitable donations in the name of Geisha

27  House to advance his own personal goals.

28

56.    On information and belief, Moore and Malin, individually, together, and with certain co-conspirators in Los Angeles, Washington, D.C. and elsewhere, disguised many of these illicit and improper payments as "management fees" or "loans".  By so classifying these payments, Moore and Malin also made it a point to classify these improper transactions as "loans" in some cases to avoid paying income taxes on these monies.  This illicit scheme is not limited to Moore and Malin's contact with Hilty, but is part of a broader scheme that Moore and Malin have used at various restaurants and clubs they own and operate throughout the country.  On information and belief, dozens of investors have been harmed by Moore and Malin's illegal conduct.

57.    On information and belief, and as described more fully herein, Moore and Malin used most, if not all, of the monies that they divested or misappropriated from Hilty and other investors with McDonald and Pau's assistance, as well as through their various illegal schemes, to support lavish personal lifestyles.

58.    Malin, Moore, McDonald and Pau's individual and collective misconduct has virtually destroyed all the value in these restaurants and clubs as they have caused the restaurants and clubs to incur enormous debts, they have accumulated multiple lawsuits amounting to hundreds of thousands of dollars in liability claims resulting in increased insurance premiums or loss of insurance altogether, and generated bad publicity for the restaurants and clubs, causing a significant decrease in business.  For instance, following the highly publicized 2007 incident in which Moore was personally accused of sexually battering an intoxicated nineteen-year-old patron of one of the Dolce Group ventures, the reputation of the various Dolce Group Entities, including Geisha L.A., suffered dramatically.  While Geisha House was significantly profitable before the media reported on Moore's alleged sexual tortious misconduct, as a result of the negative media publicity, the restaurant continued to lose revenue such that, on information and belief, it is no longer profitable.

312757.1

59.     On information and belief, Moore and Malin and certain of their employees, including Pau, have caused Geisha House to be sued for various alleged torts and breaches of contract.  Patrons and former employees of Geisha House have sued recover damages for employment discrimination, sexual harassment, same sex harassment, wage and hour violations, and negligence, among other allegations.  Moore and Malin's landlords have also sued and/or threatened to sue Moore and Malin and/or Geisha House for unpaid rent.  Other lenders and vendors have sued Moore and Malin and Geisha House for unpaid bills, which should have properly been paid by McDonald. Accordingly, Moore, Malin, and Geisha House are in arrears to multiple creditors, causing serious solvency concerns for the restaurants.

60.     On information and belief, one of Moore and Malin's response to these lawsuits and creditor demands is to hide their assets.  Moore and Malin have moved some of their monies to offshore accounts, including to accounts and homes in Cook Islands.  McDonald and Pau are aware of these off-shore accounts and hidden assets owned and/or controlled by Moore and Malin, along with the corporations they own and operate.  Moore and Malin have moved money around to various corporations they control outside of the restaurant group, such as 2HYPE, LTM, and MME.

61.     On information and belief, Moore and Malin, individually, together, and in connection with certain co-conspirators, including McDonald and Pau, have engaged in schemes designed to avoid paying income taxes and to shelter their assets from taxation, as well as from their creditors.

62.     On information and belief, Moore and Malin, individually, together, and in connection with certain co-conspirators, including McDonald and Pau, failed to report sales tax earned in connection with the sale of gift cards and merchandise in connection with their restaurants.

63.     On information and belief, Moore and Malin, individually, together, and in connection with certain co-conspirators, including McDonald and Pau, classified and/or

1 | instructed others to classify certain income they earned as "loan proceeds" in order to
2 | avoid having to pay income taxes on those monies.

3 |      64.    On information and belief, the foregoing, specifically enumerated acts and
4 | instances of misconduct, while significant in breadth, degree, and continuous nature, are
5 | but illustrative of an even broader and more pervasive course of fraud and misconduct
6 | by the Defendants implicated herein, which course of fraud and misconduct has been a
7 | hallmark of the management and operations of each of the Dolce Group Entities since
8 | the time of, or shortly following the time of, the formation of The Dolce Group in 2003.

9 |      65.    Many, but not all, of the particulars of the Defendants' continuing course of
10 | fraud and misconduct were specifically detailed in a complaint filed by Arazm on or
11 | about August 2, 2011, against Moore, Malin, and other Defendants named herein, in the
12 | action captioned *Arazm v. Malin, et al.*, Los Angeles Superior Court Case No. BC
13 | 466696 (the "Arazm Lawsuit").

14 |      66.    Initially, the Arazm Lawsuit was brought both on behalf of Arazm as an
15 | individual and on behalf of Geisha L.A.  Subsequently, Arazm filed an amended
16 | complaint, in which she brought claims solely on behalf of herself, as an individual, and
17 | not on behalf of Geisha L.A.

18 |      67.    On information and belief, the claims brought on behalf of Geisha L.A.
19 | were dropped at the insistence of Malin and Moore who maintained, notwithstanding
20 | her titular position as a managing member, that Arazm lacked the requisite
21 | authorization, which Moore and Malin refused to provide, to enable the lawsuit to be
22 | brought on behalf of Geisha L.A.

23 | **For Months, Hilty Tries Unsuccessfully To Obtain Access To The Books And**
24 | **Records Of Geisha L.A., Geisha Santa Ana, and Dolce Atlanta**

25 |      68.    On or about August 15, 2011, shortly after he became aware of the Arazm
26 | Lawsuit, Hilty, through his counsel, sent a letter to Moore and Malin, in their capacity
27 | as managing members of Geisha L.A., Geisha Santa Ana, and Dolce Atlanta, in which
28 |

1  Hilty demanded to be provided with access to all books and records of those entities,

2  and also to be allowed to have performed an accounting of all financial activity of those

3  entities since their inception (the "Demand Letter").

4      69.    In the months following the sending of the Demand Letter, Hilty engaged

5  in numerous communications regarding his demand with one or more Dolce Group

6  representatives.  In the course of those communications, Hilty, among other things,

7  reiterated his demand and specified its scope, even providing a detailed inventory of the

8  types and categories of documents requested.

9      70.    On a number of occasions in the course of those communications, Hilty

10  was told, among other things, that he would be provided with all documents and

11  information to which he was entitled as a member of the respective LLCs, subject only

12  to the preparation, and Hilty's execution, of a confidentiality agreement.  Though Hilty

13  subsequently inquired on multiple occasions about the status of the confidentiality

14  agreement and requested that it be sent to him as soon as possible so that the inspection

15  process could commence, Hilty was never provided with either any confidentiality

16  agreement or any of the books and records he had requested to examine.

17      71.    To date, Moore and Malin have failed and refused to comply with Hilty's

18  requests made in the Demand Letter, and on numerous subsequent occasions, for access

19  to the books and records of Geisha L.A., Geisha Santa Ana, and Dolce Atlanta, and to

20  be allowed to have performed an accounting with respect to those entities.  At this point,

21  there is no reasonable prospect of compliance with such demands, absent the entry of an

22  appropriate order of this Court.

23  **Hilty Has Standing To Bring The Derivative Claims He Asserts,**

24  **And Demand On The LLCs Is Excused As Futile**

25      72.    Hilty brings certain claims asserted herein in a derivative capacity, on

26  behalf of nominal defendants Geisha L.A. and Geisha Santa Ana, in the right and for the

27  benefit of those entities and their members.  Hilty has standing to bring the derivative

28

claims he asserts, pursuant to California Corporations Code section 17501(a), in that, among other things, Hilty is a member of record of the respective entities and was so at the times of the transactions of which Hilty complains.

73.     Hilty fairly and adequately represents the interests of the members of Geisha L.A. and Geisha Santa Ana who are similarly situated in enforcing the rights of those entities.

74.     Any requirement pursuant to California Corporations Code section 17501(a) that Hilty make a pursuit demand upon the managers of Geisha L.A. and Geisha Santa Ana to obtain the actions Hilty desires is excused as futile.  Any such demand would manifestly be futile in that, among other things:

        a.      Moore and Malin, as two of the three Managing Members of the entities, who together dominate and control the management of the entities, have demonstrated their unwillingness and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves or their co-conspirators for the acts, misconduct, and violations of law complained of herein.

        b.      Moore and Malin directly participated in, approved, and permitted the wrongs alleged herein, and are therefore not disinterested parties.

        c.      Moore and Malin cannot exercise independent objective judgment in deciding whether to bring this action or whether to prosecute this action vigorously because each of them participated personally in, and benefited personally from, the wrongdoing alleged herein, and, thus, in order to prosecute this action, they would need to sue themselves.

        d.      Any suit by the current management of the entities to remedy these wrongs would likely further expose Moore and Malin to liability and, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves.

1        e.     Moore and Malin's inability to exercise independent objective

2  judgment or to make an independent determination whether to sue themselves is

3  confirmed by, among other things: (i) their failure and refusal to comply with Hilty's

4  Demand Letter; and (ii) their demand that Arazm amend her complaint in the Arazm

5  Lawsuit to drop all claims brought on behalf of Geisha L.A. and to proceed solely in her

6  individual capacity, rather than on behalf of Geisha L.A.

7       75.    Prior to the filing of this Complaint, Hilty delivered a copy thereof to the

8  managers of Geisha L.A. and Geisha Santa Ana, including Moore and Malin.

9

10                  **FIRST CLAIM FOR RELIEF**

        (Securities Fraud – Exchange Act § 10(b) and Rule 10b-5)

11       (By Hilty, Individually, Against All Individual Defendants)

12      76.    Hilty refers to and incorporates herein by reference each and every

13  allegation contained in paragraphs 1 through 76, inclusive, as though fully set forth

14  herein.

15      77.    In connection with each of the Investments, Moore and Malin, directly and

16  indirectly, caused the transmission to Hilty of information and documents, including,

17  without limitation, Offering Materials.  Such transmissions were effected by the use and

18  means of instrumentalities of interstate commerce and the mails, including email,

19  interstate telephone calls, and U.S. mail.

20      78.    In connection with each of the Investments, Moore and Malin suppressed

21  and concealed from Hilty material facts (the "Concealed Facts"), including, without

22  limitation, that Moore and Malin were, at all such times, engaged in a continuous and

23  systematic scheme and course of conduct to loot the Dolce Group Entities and defraud

24  the investors in those entities, particularly the class of Non-Managing Members of the

25  Dolce Group Entities (including, without limitation, Geisha L.A., Geisha Santa Ana,

26  and Dolce Atlanta), which included Hilty.

27

28

79.     The Concealed Facts were never disclosed to Hilty by Moore or Malin, whether in the Offering Materials, or otherwise in connection with the Offerings, or otherwise in the course of Hilty's communications with Moore, Malin, and those acting on their behalf, relating to the Investments, or otherwise at any time prior to Hilty's decisions to make the Investments.

80.     Moore and Malin were bound to disclose the Concealed Facts to Hilty in connection with his making of the Investments.

81.     Moore and Malin concealed and suppressed the Concealed Facts with the intent to defraud Hilty and to induce him to make the Investments.

82.     At the times Hilty made the Investments, he was unaware of the Concealed Facts, and he would not have made the Investments had he known of the Concealed Facts.

83.     In reasonable and justifiable reliance on Moore and Malin's conduct, including, without limitation, their failure to disclose the Concealed Facts, Hilty was induced to make the Investments.

84.     By virtue of the foregoing and other conduct, Moore and Malin, throughout the relevant period, individually and in concert with each other and others, directly and indirectly, by the use and means of instrumentalities of interstate commerce and the mails, engaged and participated in a continuous course of conduct designed to obtain millions of dollars of investments in Geisha L.A., Geisha Santa Ana, and Dolce Atlanta, with the ultimate goal of diverting those funds to their own personal benefit.

85.     Defendants employed devices, schemes, and artifices to defraud while in possession of material, adverse non-public information, and they engaged in acts, practices, and a course of conduct that included the making of, and/or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about the Dolce Group Entities not misleading.

86.     Moore and Malin, as Managing Members of Geisha L.A., Geisha Santa Ana, and Dolce Atlanta, are liable as direct participants in the wrongs complained of herein.  Through their positions of control and authority, each of the defendants was able to and did control the conduct complained of herein and the content of the documents and information disseminated as part of the process of inducing the making of investments (including by Hilty) in Geisha L.A., Geisha Santa Ana, and Dolce Atlanta.

87.     Moore and Malin acted with scienter throughout the relevant period, in that they had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein.  Moore and Malin constituted the senior management of the entities at issue, and were therefore directly responsible for the false and misleading statements and/or omissions disseminated to members of the public (including Hilty), through the Offering Materials and otherwise.

88.     Moore and Malin participated in a scheme to defraud with the purpose and effect of defrauding Hilty and other investors in Geisha L.A., Geisha Santa Ana, and Dolce Atlanta.

89.     By virtue of the foregoing conduct, Moore and Malin have violated § 10(b) of the Exchange, and Rule 10b-5 promulgated thereunder.

90.     As a proximate result of the foregoing conduct, Hilty has been damaged in an amount to be proven at trial, but in excess of $1,000,000.

91.     In committing the acts complained of herein, the Individual Defendants acted with oppression, fraud, and malice within the meaning of California Civil Code section 3294, entitling Hilty to the recovery of exemplary damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Securities Fraud – Controlling Persons – Exchange Act § 20(a))
### (By Hilty, Individually, Against All Individual Defendants)

92.    Hilty refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 92, inclusive, as though fully set forth herein.

93.    Defendants, by virtue of their positions with Geisha L.A., Geisha Santa Ana, Dolce Atlanta, and the Dolce Group, along with their specific acts alleged herein, were, at the time of wrongs alleged herein, controlling persons of Geisha L.A., Geisha Santa Ana, and Dolce Atlanta, within the meaning of § 20(a) of the Exchange Act. They had the power and influence and exercised the same to cause the illegal conduct and practices complained of herein.

94.    As a proximate result of the foregoing conduct, Hilty has been damaged in an amount to be proven at trial, but in excess of $1,000,000.

## THIRD CLAIM FOR RELIEF
### (Fraud)
### (By Hilty, Individually, Against Defendants Moore and Malin)

95.    Hilty refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 95, inclusive, as though fully set forth herein.

96.    By virtue of their conduct alleged herein, Moore and Malin fraudulently induced Hilty to make the Investments, as a proximate result of which, Hilty has been damaged in an amount to be proven at trial, but in excess of $1,000,000.

97.    In committing the acts complained of herein, the Individual Defendants acted with oppression, fraud, and malice within the meaning of California Civil Code section 3294, entitling Hilty to the recovery of exemplary damages in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (Breach Of Fiduciary Duty)
### (By Hilty, Individually, Against All Individual Defendants)

98.   Hilty refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 98, inclusive, as though fully set forth herein.

99.   As Managing Members of Geisha L.A., Geisha Santa Ana, and Dolce Atlanta, Moore and Malin owed and continue to owe to Hilty fiduciary duties of good faith, loyalty, and care.

100.   As Controller of the Dolce Group, McDonald owed and continues to owe to Hilty fiduciary duties of good faith, loyalty, and care.

101.   As Director of Operations of the Dolce Group, Pau owed and continues to owe to Hilty fiduciary duties of good faith, loyalty, and care.

102.   Moore, Malin, McDonald, and Pau (the Individual Defendants) have breached their fiduciary duties owed to Hilty by, among other things, engaging in conduct that constitutes fraud, gross negligence, intentional misconduct, and knowing violations of law.

103.   As a proximate result of the Individual Defendants' breaches of fiduciary duty, Hilty has been damaged in an amount to be proven at trial, but in excess of $1,000,000.

104.   In committing the acts complained of herein, the Individual Defendants acted with oppression, fraud, and malice within the meaning of California Civil Code section 3294, entitling Hilty to the recovery of exemplary damages in an amount to be proven at trial.

105.   Pursuant to the terms of the operating agreements governing Geisha L.A., Geisha Santa Ana, and Dolce Atlanta, Hilty is entitled to recover all of his reasonable

1  | fees, costs and expenses incurred in enforcing his rights asserted herein, including,

2  | without limitation, his reasonable attorneys' fees and expenses.

3

### FIFTH CLAIM FOR RELIEF
#### (Civil Conspiracy)
#### (By Hilty, Individually, Against All Individual Defendants, 2HYPE, LTM, and MME)

6  |    106.   Hilty refers to and incorporates herein by reference each and every

7  | allegation contained in paragraphs 1 through 106, inclusive, as though fully set forth

8  | herein.

9  |    107.   On information and belief, Moore, Malin, McDonald, and Pau (the

10 | Individual Defendants) conspired collectively, and with and among one another and

11 | 2HYPE, LTM, and MME, to, and did in fact, embezzle, divert, and misappropriate

12 | monies from Hilty and defraud Hilty and damage him through their breaches of

13 | fiduciary duties to him and other misconduct alleged herein.

14 |    108.   As a proximate result of the Individual Defendants' conspiracy, Hilty has

15 | been damaged in an amount to be proven at trial, but in excess of $1,000,000.

16 |    109.   In committing the acts complained of herein, the Individual Defendants

17 | acted with oppression, fraud, and malice within the meaning of California Civil Code

18 | section 3294, entitling Hilty to the recovery of exemplary damages in an amount to be

19 | proven at trial.

20 |    110.   Pursuant to the terms of the operating agreements governing Geisha L.A.,

21 | Geisha Santa Ana, and Dolce Atlanta, Hilty is entitled to recover all of his reasonable

22 | fees, costs and expenses incurred in enforcing his rights asserted herein, including,

23 | without limitation, his reasonable attorneys' fees and expenses.

## SIXTH CLAIM FOR RELIEF
### (Unjust Enrichment)
### (By Hilty, Individually, Against All Individual Defendants, 2HYPE, LTM, and MME)

111.   Hilty refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 111, inclusive, as though fully set forth herein.

112.   As a result of their misconduct alleged herein, the Individual Defendants, 2HYPE, LTM, and MME have been unjustly enriched.  Hilty is entitled to restitution of all amounts by which such defendants were unjustly enriched at Hilty's expense.

## SEVENTH CLAIM FOR RELIEF
### (Accounting)
### (By Hilty, Individually, Against All Defendants)

113.   Hilty refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 113, inclusive, as though fully set forth herein.

114.   Information relating to the finances of Geisha L.A., Geisha Santa Ana, and Dolce Atlanta, the amounts improperly diverted from those entities, and the amounts to which Hilty may be entitled as a member of those entities, is non-public and is uniquely within the knowledge and control of Defendants, who have failed and refused to account to Hilty with respect to such matters.  Such matters are presently unknown and cannot reasonably be ascertained without a full, complete, and retroactive accounting of the books and records of all of the Dolce Group Entities (including, but not limited to, Geisha L.A., Geisha Santa Ana, and Dolce Atlanta), along with, among others, those of 2HYPE, LTM, and MME.  The full amount due and owing to Hilty can only be ascertained pursuant to a Court-ordered and supervised accounting of all of the income received by Moore, Malin, their co-conspirators, and the business entities controlled by or affiliated with them.

1    115.   Hilty has demanded that he be permitted to have an accounting performed

2  relating to the aforementioned matters and transactions, but Defendants have failed and

3  refused, and continue to fail and refuse, to permit such an accounting to be performed.

4    116.   Defendants owe Hilty an accounting as described herein, and are obligated

5  to pay Hilty all sums found to be due and owing him as a result of such accounting.

6

7                    **EIGHTH CLAIM FOR RELIEF**
                   (Unfair Competition – Cal. Bus. & Prof. Code § 17200, *et seq.*)

8     (By Hilty, Individually, Against All Individual Defendants, 2HYPE, LTM, and MME)

9    117.   Hilty refers to and incorporates herein by reference each and every

10  allegation contained in paragraphs 1 through 117, inclusive, as though fully set forth

11  herein.

12    118.   The conduct of the Individual Defendants, 2HYPE, LTM, and MME

13  alleged herein constitutes an unlawful business act or practice under California's Unfair

14  Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL"), in that it

15  violates multiple provisions of law, including, without limitation: California's limited

16  liability company laws, including, without limitation, California Corporations Code §

17  17153; California's securities law, including, without limitation, California Corporations

18  Code §§ 25401-25403; and various provisions of the common law, including, without

19  limitation, the common law of fraud and fiduciary duty.

20    119.   The conduct of the Individual Defendants, 2HYPE, LTM, and MME

21  alleged herein constitutes an unfair business act or practice under the UCL in that,

22  among other things:

23          a.     such conduct offends public policy;

24          b.     such conduct is immoral, unethical, oppressive, unscrupulous, or

25  substantially injurious to members of the public, including, without limitation, members

26  of the public investing in Dolce Group Entities;

27

28

312757.1                              - 27 -

c.   such conduct harms members of the public, including, without limitation, members of the public investing in Dolce Group Entities, and such harm far outweighs any conceivable benefit or utility of such conduct; and

d.   such conduct violates the policy or spirit of, or threatens an incipient violation of, multiples provisions of law, including, without limitation: California's limited liability company laws, including, without limitation, California Corporations Code § 17153; California's securities law, including, without limitation, California Corporations Code §§ 25401-25403; and various provisions of the common law, including, without limitation, the common law of fraud and fiduciary duty.

120.   The conduct of the Individual Defendants, 2HYPE, LTM, and MME alleged herein constitutes a fraudulent business act or practice under the UCL in that, among other things, it is likely to deceive members of the public, including, without limitation, members of the public investing in Dolce Group Entities.

121.   The conduct of the Individual Defendants, 2HYPE, LTM, and MME alleged herein constitutes unfair competition under the UCL.

122.   As a result of the unfair competition of the Individual Defendants, 2HYPE, LTM, and MME, Hilty has suffered injury in fact and has lost money or property.

123.   Hilty is entitled to an order and judgment of this Court restoring to him all money or property acquired from him by the Individual Defendants, 2HYPE, LTM, and MME by means of their unfair competition.

124.   The unfair competition of the Individual Defendants, 2HYPE, LTM, and MME is ongoing and presents a continuing threat to members of the public.  Unless enjoined, those Defendants will continue to engage in the unfair competition described herein.  Under the UCL, this Court is empowered to, and should, grant preliminary and permanent injunctive relief against such acts and practices.  Under the UCL, this Court is also empowered to, and should, appoint a receiver to assume control of the operations of all ongoing businesses of Defendants within this Court's jurisdiction.

## NINTH CLAIM FOR RELIEF
### (Appointment Of A Receiver)
### (By Hilty, Individually, Against Moore and Malin)

125.   Hilty refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 125, inclusive, as though fully set forth herein.

126.   As co-members of Geisha L.A., Hilty, Moore, and Malin, are joint owners of and/or have joint interests in Geisha L.A. and its property and operations and the proceeds thereof.

127.   The property of Geisha L.A. is in danger of being lost, removed, or materially injured by the ongoing misconduct of Moore, Malin, and their co-conspirators as described herein.

128.   Pursuant to California Code of Civil Procedure § 564(b)(1), Hilty is entitled to the appointment of a receiver to assume control of the operations of Geisha L.A.

## TENTH CLAIM FOR RELIEF
### (Breach Of Fiduciary Duty)
### (By Hilty, Derivatively on behalf of Geisha L.A. and Geisha Santa Ana, Against All Individual Defendants)

129.   Hilty refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 129, inclusive, as though fully set forth herein.

130.   As Managing Members of Geisha L.A. and Geisha Santa Ana, Moore and Malin owed and continue to owe to those entities fiduciary duties of good faith, loyalty, and care.

131.   As Controller of the Dolce Group, McDonald owed and continues to owe to Geisha L.A. and Geisha Santa Ana fiduciary duties of good faith, loyalty, and care.

132.   As Director of Operations of the Dolce Group, Pau owed and continues to owe to Geisha L.A. and Geisha Santa Ana fiduciary duties of good faith, loyalty, and care.

133.   Moore, Malin, McDonald, and Pau have breached their fiduciary duties owed to Geisha L.A. and Geisha Santa Ana by, among other things, engaging in conduct that constitutes fraud, gross negligence, intentional misconduct, and knowing violations of law.

134.   As a proximate result of the Individual Defendants' breaches of fiduciary duty, Geisha L.A. and Geisha Santa Ana have been damaged in an amount to be proven at trial.

135.   In committing the acts complained of herein, the Individual Defendants acted with oppression, fraud, and malice within the meaning of California Civil Code section 3294, entitling Geisha L.A. and Geisha Santa Ana to the recovery of exemplary damages in an amount to be proven at trial.

136.   Pursuant to the terms of the operating agreements governing Geisha L.A. and Geisha Santa Ana, those entities are entitled to recover all of their reasonable fees, costs and expenses incurred in enforcing their rights asserted herein, including, without limitation, all reasonable attorneys' fees and expenses.

## ELEVENTH CLAIM FOR RELIEF
### (Civil Conspiracy)
#### (By Hilty, Derivatively on behalf of Geisha L.A. and Geisha Santa Ana, Against All Individual Defendants, 2HYPE, LTM, and MME)

137.   Hilty refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 137, inclusive, as though fully set forth herein.

138.   On information and belief, Moore, Malin, McDonald, and Pau (the Individual Defendants) conspired collectively, and with and among one another and 2HYPE, LTM, and MME, to, and did in fact, embezzle, divert, and misappropriate

312757.1                                    - 30 -

1   monies from Geisha L.A. and Geisha Santa Ana and defraud those entities and their

2   investors and damage them through the breach of the Individual Defendants' fiduciary

3   duties.

4       139.   As a proximate result of the Individual Defendants' conspiracy, Geisha

5   L.A. and Geisha Santa Ana have been damaged in an amount to be proven at trial.

6       140.   In committing the acts complained of herein, the Individual Defendants

7   acted with oppression, fraud, and malice within the meaning of California Civil Code

8   section 3294, entitling Geisha L.A. and Geisha Santa Ana to the recovery of exemplary

9   damages in an amount to be proven at trial.

10      141.   Pursuant to the terms of the operating agreements governing Geisha L.A.

11  and Geisha Santa Ana, those entities are entitled to recover all of their reasonable fees,

12  costs and expenses incurred in enforcing their rights asserted herein, including, without

13  limitation, all reasonable attorneys' fees and expenses.

### TWELFTH CLAIM FOR RELIEF
#### (Unjust Enrichment)
(By Hilty, Derivatively on behalf of Geisha L.A. and Geisha Santa Ana,
Against All Individual Defendants, 2HYPE, LTM, and MME)

17      142.   Hilty refers to and incorporates herein by reference each and every

18  allegation contained in paragraphs 1 through 142, inclusive, as though fully set forth

19  herein.

20      143.   As a result of their misconduct alleged herein, the Individual Defendants,

21  2HYPE, LTM, and MME have been unjustly enriched.  Geisha L.A. and Geisha Santa

22  Ana are entitled to restitution of all amounts by which such defendants were unjustly

23  enriched at the expense of Geisha L.A. and Geisha Santa Ana.

## THIRTEENTH CLAIM FOR RELIEF
### (Unfair Competition – Cal. Bus. & Prof. Code § 17200, *et seq.*)
### (By Hilty, Derivatively on behalf of Geisha L.A. and Geisha Santa Ana, Against All Individual Defendants, 2HYPE, LTM, and MME)

144.   Hilty refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 144, inclusive, as though fully set forth herein.

145.   The conduct of the Individual Defendants, 2HYPE, LTM, and MME alleged herein constitutes an unlawful business act or practice under the UCL, in that it violates multiple provisions of law, including, without limitation: California's limited liability company laws, including, without limitation, California Corporations Code § 17153; California's securities law, including, without limitation, California Corporations Code §§ 25401-25403; and various provisions of the common law, including, without limitation, the common law of fraud and fiduciary duty.

146.   The conduct of the Individual Defendants, 2HYPE, LTM, and MME alleged herein constitutes an unfair business act or practice under the UCL in that, among other things:

a.   such conduct offends public policy;

b.   such conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to members of the public, including, without limitation, members of the public investing in Dolce Group Entities;

c.   such conduct harms members of the public, including, without limitation, members of the public investing in Dolce Group Entities, and such harm far outweighs any conceivable benefit or utility of such conduct; and

d.   such conduct violates the policy or spirit of, or threatens an incipient violation of, multiples provisions of law, including, without limitation: California's limited liability company laws, including, without limitation, California Corporations Code § 17153; California's securities law, including, without limitation, California

312757.1

1    Corporations Code §§ 25401-25403; and various provisions of the common law,

2    including, without limitation, the common law of fraud and fiduciary duty.

3        147.   The conduct of the Individual Defendants, 2HYPE, LTM, and MME

4    alleged herein constitutes a fraudulent business act or practice under the UCL in that,

5    among other things, it is likely to deceive members of the public, including, without

6    limitation, members of the public investing in Dolce Group Entities.

7        148.   The conduct of the Individual Defendants, 2HYPE, LTM, and MME

8    alleged herein constitutes unfair competition under the UCL.

9        149.   As a result of the unfair competition of the Individual Defendants, 2HYPE,

10   LTM, and MME, Geisha L.A. and Geisha Santa Ana have suffered injury in fact and

11   have lost money or property.

12       150.   Geisha L.A. and Geisha Santa Ana are entitled to an order and judgment of

13   this Court restoring to them all money or property acquired from them by the Individual

14   Defendants, 2HYPE, LTM, and MME by means of their unfair competition.

15       151.   The unfair competition of the Individual Defendants, 2HYPE, LTM, and

16   MME is ongoing and presents a continuing threat to members of the public.  Unless

17   enjoined, those Defendants will continue to engage in the unfair competition described

18   herein.  Under the UCL, this Court is empowered to, and should, grant preliminary and

19   permanent injunctive relief against such acts and practices.  Under the UCL, this Court

20   is also empowered to, and should, appoint a receiver to assume control of the operations

21   of all ongoing businesses of Defendants within this Court's jurisdiction.

22

23       **WHEREFORE,** Hilty prays for the following relief:

24       **ON THE FIRST AND SECOND CLAIMS FOR RELIEF**

25       Hilty's damages in an amount to be proven at trial, but in excess of $1,000,000.

26

27

28

## ON THE THIRD, FOURTH, AND FIFTH CLAIM FOR RELIEF

A.    Hilty's damages in an amount to be proven at trial, but in excess of $1,000,000.

B.    Exemplary damages in an amount to be proven at trial.

## ON THE SIXTH CLAIM FOR RELIEF

Restitution to Hilty of all amounts by which the Individual Defendants, 2HYPE, LTM, and MME have been unjustly enriched at Hilty's expense.

## ON THE SEVENTH CLAIM FOR RELIEF

An accounting of Defendants' books and records as set forth herein, and recovery by Hilty of the amounts found to be due and owing him as a result of the accounting.

## ON THE EIGHTH CLAIM FOR RELIEF

A.    Restitution to Hilty of all money or property acquired from him by the Individual Defendants, 2HYPE, LTM, and MME by means of unfair competition;

B.    Preliminary and permanent injunctive relief against the unfair competition of the Individual Defendants, 2HYPE, LTM, and MME; and

C.    Appointment of a receiver to assume control of the operations of all ongoing businesses of Defendants within this Court's jurisdiction.

## ON THE NINTH CLAIM FOR RELIEF

Appointment of a receiver to assume control of the operations of Geisha L.A.

## ON THE TENTH CLAIM FOR RELIEF

A.    Geisha L.A. and Geisha Santa Ana's damages in an amount to be proven at trial.

B.    Exemplary damages in an amount to be proven at trial.

## ON THE ELEVENTH CLAIM FOR RELIEF

A.    Geisha L.A. and Geisha Santa Ana's damages in an amount to be proven at trial.

B.    Exemplary damages in an amount to be proven at trial.

## ON THE TWELF CLAIM FOR RELIEF

Restitution to Geisha L.A. and Geisha Santa Ana of all amounts by which the Individual Defendants, 2HYPE, LTM, and MME have been unjustly enriched at the expense of Geisha L.A. and Geisha Santa Ana.

## ON THE THIRTEENTH CLAIM FOR RELIEF

A.     Restitution to Geisha L.A. and Geisha Santa Ana of all money or property acquired from them by the Individual Defendants, 2HYPE, LTM, and MME by means of unfair competition;

B.     Preliminary and permanent injunctive relief against the unfair competition of the Individual Defendants, 2HYPE, LTM, and MME; and

C.     Appointment of a receiver to assume control of the operations of all ongoing businesses of Defendants within this Court's jurisdiction.

## ON ALL CLAIMS FOR RELIEF

A.     Interest at the maximum legal rate;

B.     Attorneys' fees, costs, and expenses as permitted by law, equity or contract; and

C.     Such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Hilty hereby demands a trial by jury of all issues so triable.

Date: March 9, 2012

VALENSI ROSE, PLC

By: _Louis E. Kempinsky_
Louis E. Kempinsky
Attorneys for Plaintiff David R. Hilty

312757.1

- 35 -

## VERIFICATION

1

I have read the foregoing VERIFIED COMPLAINT FOR: (1) SECURITIES
2 FRAUD; (2) FRAUD; (3) BREACH OF FIDUCIARY DUTY; (4) CIVIL
CONSPIRACY; (5) UNJUST ENRICHMENT; (6) ACCOUNTING; (7) UNFAIR
3 COMPETITION; AND (8) APPOINTMENT OF A RECEIVER ("COMPLAINT")
and know its contents.

4

I am a party to this action and the matters stated in the foregoing Complaint are
5 true based on my own knowledge except as to those matters which are stated on
information and belief, and as to those matters I believe them to be true.

6

I declare under penalty of perjury under the laws of the United States that the
7 foregoing is true and correct.

8

Executed on March 12, 2012, at New York, New York.

9

10 DAVID R. HILTY                          Signature
Print Name of Signatory

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

312757.1

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

CENTRAL    District of CALIFORNIA-WESTERN DIVISION

DAVID R. HILTY, an individual, and derivatively on
behalf of GEISHA HOUSE, LLC, etc., et al.
            *Plaintiff*    See attached
                v.
LONNIE MOORE, an individual; MICHAEL ROGERT CARRI
a/k/a MICHAEL ROBERT MALIN a/k/a, etc., et al.
            *Defendant*    See attached.

)
)
)
)
)
)
)
)
)
)

**CV12-02089** JLG

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

LONNIE MOORE, an individual; MICHAEL ROBERT CARRI a/k/a MICHAEL ROBERT MALIN a/k/a MIKE
BOOGIE a/k/a MIKE GOOGIE MALIN, an individual; 2HYPE PRODUCTION, INC., a California
corporation; LTM CONSULTING, INC., a California corporation; MOORE & MALIN ENTERPRISES,
LLC.; a California limited liability company; JAMES MCDONALD, an individual; ROBERT PAU,
an individual; GEISHA HOUSE, LLC, a California limited liability company; GEISHA HOUSE
SANTA ANA, LLC, a California limited liability company; and DOES 1 through 10, inclusive

        A lawsuit has been filed against you.

        Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you
are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ.
P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of
the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney,
whose name and address are: Louis E. Kempinsky, Esq., VALENSI ROSE, PLC, 1888 Century
Park East, Suite 1100, Los Angeles, CA 90067

        If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.
You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:    MAR 1 2 2012          _____
                                *Signature of Clerk or Deputy Clerk*

AO-440

1  Louis E. Kempinsky (State Bar No. 90068)
   *lek@vrmlaw.com*
2  VALENSI ROSE, PLC
   1888 Century Park East, Suite 1100
3  Los Angeles, CA  90067
   Telephone: (310) 277-8011
4  Facsimile:  (310) 601-7009

5  Attorneys for Plaintiff
   David R. Hilty

6

7              **UNITED STATES DISTRICT COURT**

8              **CENTRAL DISTRICT OF CALIFORNIA**

9                   **WESTERN DIVISION**

10 DAVID R. HILTY, individually, and           Case No.
   derivatively on behalf of GEISHA HOUSE,
11 LLC, a California limited liability company,
   and GEISHA SANTA ANA, LLC, a             **VERIFIED COMPLAINT FOR:**
12 California limited liability company,
                                             **(1)  SECURITIES FRAUD;**
13           Plaintiff,                       **(2)  FRAUD;**
                                             **(3)  BREACH OF FIDUCIARY**
14           vs.                              **     DUTY;**
                                             **(4)  CIVIL CONSPIRACY;**
15 LONNIE MOORE, an individual; MICHAEL       **(5)  UNJUST ENRICHMENT;**
   ROBERT CARRI a/k/a MICHAEL ROBERT          **(6)  ACCOUNTING;**
16 MALIN a/k/a MIKE BOOGIE a/k/a MIKE         **(7)  UNFAIR COMPETITION (Cal.**
   BOOGIE MALIN, an individual; 2HYPE         **     Bus. & Prof. Code § 17200, *et***
17 PRODUCTIONS, INC., a California            **     *seq*.); and**
   corporation; LTM CONSULTING, INC., a       **(8)  APPOINTMENT OF A**
18 California corporation; MOORE & MALIN       **     RECEIVER**
   ENTERPRISES, LLC.; a California limited
19 liability company; JAMES MCDONALD, an      **DEMAND FOR JURY TRIAL**
   individual; ROBERT PAU, an individual; and
20 DOES 1 through 10, inclusive,

21           Defendants,

22           – and –

23 GEISHA HOUSE, LLC, a California limited
   liability company, and GEISHA SANTA
24 ANA, LLC, a California limited liability
   company,
25
             Nominal Defendants.
26

27

28
   312757.1                          - 1 -

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .


I declare under penalty of perjury that this information is true.


Date: _____                          _____
                                                                        *Server's signature*

                                                              _____
                                                                        *Printed name and title*

                                                              _____
                                                                        *Server's address*

Additional information regarding attempted service, etc:

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐ )

DAVID R. HILTY, an individual, and derivatively on behalf of GEISHA HOUSE, LLC, etc., et al.

**DEFENDANTS**

LONNIE MOORE, an individual; MICHAEL ROBERT CARRI a/k/a MICHAEL ROBERT MALIN a/k/a MIKE BOOGIE, etc., et al.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Louis E. Kempinsky, Esq.
VALENSI ROSE, PLC
1888 Century Park East
Suite 1100
Los Angeles, CA 90067
310.277.8011

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT:** $ not less than 1,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. Sections 78j(b), 78n(a), and 78t(a), and Rule 10b-5, 17 C.F.R. Section 240.10b-5. Security Fraud, Breach of Fiduciary Duty, Civil Conspiracy, Unjust Enrichment, Accounting, Unfair Competition

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☒ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco- mmodations | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | **IMMIGRATION** | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | ☐ 465 Other Immigration Actions | | |

CV12-02089

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

**VIII(a).   IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No  [ ] Yes

If yes, list case number(s): _____

**VIII(b).   RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] No  [ ] Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)    [ ]   A. Arise from the same or closely related transactions, happenings, or events; or

[ ]   B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ]   C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ]   D. Involve the same patent, trademark or copyright, __and__ one of the factors identified above in a, b or c also is present.

**IX.   VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

[ ]   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | New York |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

[ ]   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**

Note: In land condemnation cases, use the location of the tract of land involved

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):**  _Louis E. Kempinski_          Date  March 9 , 2012

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |