Brett K. Shaad, Esq. (#255846)
brett@brettshaad.com
LAW OFFICE OF BRETT K. SHAAD
6633 Hollywood Boulevard
Los Angeles, CA  90028
Telephone: (323) 460-6155
Facsimile: (323) 460-2344
Attorney for Defendants Lonnie Moore, Michael Robert Malin,
2Hype Productions, Inc. and LTM Consulting, Inc.



FILED
CLERK, U.S. DISTRICT COURT

APR 1 3 2012

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| DAVID R. HILTY, individually, and derivatively on behalf of GEISHA HOUSE, LLC, a California limited liability company, and GEISHA SANTA ANA, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>LONNIE MOORE, an individual; MICHAEL ROBERT CARRI a/k/a MICHAEL ROBERT MALIN a/k/a MIKE BOOGIE a/k/a MIKE BOOGIE MALIN, an individual; 2HYPE PRODUCTIONS, INC., a California Corporation; LTM CONSULTING, INC., a California Corporation; MOORE & MALIN ENTERPRISES, LLC, a California limited liability company; JAMES MCDONALD, an individual; ROBERT PAU, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>– and –<br><br>GEISHA HOUSE, LLC, a California limited liability company, and GEISHA SANTA ANA, LLC, a California limited liability company,<br><br>Nominal Defendants.<br><br>LONNIE MOORE, an individual; MICHAEL ROBERT CARRI a/k/a MICHAEL ROBERT MALIN a/k/a MIKE BOOGIE a/k/a MIKE BOOGIE MALIN, an individual, 2HYPE | **Case No. CV-12-02089 JCG**<br><br>**THIRD-PARTY COMPLAINT FOR INDEMNITY, CONTRIBUTION AND DECLARATORY RELIEF**<br><br>**[DEMAND FOR JURY TRIAL]** |

ORIGINAL

PRODUCTIONS, INC., a California
Corporation; and LTM CONSULTING,
INC., a California Corporation;

        Third-Party
        Plaintiffs,

        vs.

SHEREEN ARAZM a/k/a SHEREEN
KOULES, an individual, DHG
CONSULTING, INC., a California
Corporation, and ROES 1 through 10,
inclusive

        Third-Party
        Defendants.

Third-Party Plaintiffs LONNIE MOORE, MICHAEL ROBERT MALIN 2HYPE PRODUCTIONS, INC. and LTM CONSULTING ("Third-Party Plaintiffs"), for causes of action against Third-Party Defendants SHEREEN ARAZM a/k/a SHEREEN KOULES, DHG CONSULTING, INC. and ROES 1 through 10, inclusive, ("Third-Party Defendants") allege in this Third-Party Complaint as follows:

## JURISDICTION

1.     This Third-Party Complaint is made pursuant to Federal Rules of Civil Procedure 14(a) and arises out of the transaction or occurrence that is the subject matter of the Complaint.

2.     The Defendants to this Third-Party Complaint are subject to jurisdiction and venue of this Court. The Court has also has jurisdiction over the claims asserted in this Third-Party Complaint pursuant to 28 U.S.C. § 1367.

## GENERAL ALLEGATIONS

3.     Third-Party Defendant SHEREEN ARAZM is, and at all times relevant hereto has been, an individual residing and doing business in the County of Los Angeles, State of California.

4.     Third-Party Defendant DHG CONSULTING, INC. is, and at all times herein mentioned, has been a Corporation organized and existing under the

laws of the State of California with principle offices located at 6646 Hollywood Boulevard in Suite 216, in the City of Los Angeles, County of Los Angeles.

5.      The true names and capacities of Third-Party Defendants ROES 1 through 10, inclusive, are unknown to Third-Party Plaintiffs, who therefore sue said Third-Party Defendants and each of them, by such fictitious names. Third-Party Plaintiffs will seek leave of the Court to amend this Third-Party Complaint to insert the true names and capacities of factiously named Third-Party Defendants when the same have been ascertained. Third-Party Plaintiffs are informed and believes and based thereon alleges that each Third-Party Defendants herein designated as a "ROE" is legally responsible in some manner for the acts, occurrences, damages and liabilities hereinafter alleged, and actively and passively caused and contributed to the various damages referred to herein. For convenience, each reference to the named Third-Party Defendants herein shall also refer to the Roe Third-Party Defendants, and each of them.

6.      Third-Party Plaintiffs are informed and believe and based thereon alleges that at all times herein mentioned, each Third-Party Defendant designated herein is or was the agent, partner, employee and/or joint venture of each of the remaining Third-Party Defendants and was at all times herein mentioned, acting within the course and scope of said agency and employment.

7.      On March 12, 2012, an action entitled Verified Complaint with Case Number CV-12-02089-JCG was filed in the United States District Court for the Central District of California (Western Division) alleging that Third-Party Plaintiffs were liable to Plaintiff for damages arising from allegations set forth in more detail in said Complaint. Attached hereto as Exhibit A and incorporated herein by reference is said original Complaint.

8.      Third-Party Defendant SHEREEN ARAZM entered into an agreement with Third-Party Plaintiffs, pursuant to which Third-Party Defendants and Third-Party Plaintiffs would be members and joint managers of Geisha House, LLC.

9. Third-Party Defendant SHEREEN ARAZM is and, as relevant hereto, has been a member in Geisha House, LLC, a California limited liability company, with an 18.5% equity interest in said company.

10. Third-Party Defendant SHEREEN ARAZM is and, as relevant hereto, has been a managing member of Geisha Santa Ana, LLC.

11. Third-Party Defendant SHEREEN ARAZM is and, as relevant hereto, has been a managing member of Dolce Group Atlanta, LLC.

12. Third-Party Defendant DHG CONSULTING, INC. is and, as relevant hereto, has been a managing member of Dolce Group Atlanta, LLC.

13. The Complaint of Plaintiff on file in the main action herein asserts causes of action against Third-Party Plaintiffs, alleging intentional acts, negligence and breach of contract on the part of Third-Party Plaintiffs allegedly resulting in damages to Plaintiff in an amount within the jurisdiction of this Court, as more fully set forth in said Complaint. Said Complaint, and the pleadings of Defendant and Third-Party Plaintiffs in response thereto, are incorporated herein by this reference as though set forth in full.

14. Third-Party Plaintiffs deny that they are liable to Plaintiff in the main action. Third-Party Plaintiffs, however, maintain and claim that in the event that they are found liable to Plaintiff in said action, Third-Party Plaintiffs are entitled to be indemnified by Third-Party Defendants because of the above-described misconduct.

15. Third-Party Plaintiffs are informed and believe and thereon allege that Third-Party Defendants is responsible in some manner for the happenings and events alleged in Plaintiff's main action and negligently or otherwise caused the damages, if any, as therein alleged.

## FIRST CAUSE OF ACTION
### (Comparative Indemnity and Apportionment of Fault)
### (Against Third-Party Defendants)

16.     Third-Party Plaintiffs reallege and incorporate by reference Paragraphs 1 through 15, inclusive, of this Third-Party Complaint as though fully set forth herein.

17.     The principal action alleges among other things, conduct entitling Plaintiff to damages against various Defendants.

18.     Third-Party Plaintiffs contend they are not liable for the events and occurrences described by Plaintiff's complaint.

19.     Third-Party Plaintiffs are informed and believe that Third-Party Defendants was responsible, in whole or in part, for the damages suffered by Plaintiff, if any.

20.     If Third-Party Plaintiffs are judged liable to Plaintiff, Third-Party Defendants should be required to pay a share of Plaintiff's judgment, which is in proportion to her comparative negligence in causing or contributing to Plaintiff's alleged damages, and to reimburse Third-Party Plaintiffs for any payments Third-Party Plaintiffs make to Plaintiff in excess of their proportional share of Third-Party Defendants' negligence.

21.     As a direct and proximate result of the above, Third-Party Plaintiffs have been damaged by reason of investigation, expenses, attorney's fees and costs which have been, and will be, incurred, in a sum not currently known.  When the true amount of damages has been ascertained, Third-Party Plaintiffs will amend this Third-Party Complaint to insert the same.

## SECOND CAUSE OF ACTION

### (Total Equitable Contribution)

### (Against Third-Party Defendants)

22.     Third-Party Plaintiffs reallege and incorporate by reference Paragraphs 1 through 21, inclusive, of this Third-Party Complaint as though fully set forth herein.

23.     If Third-Party Plaintiffs are found in some manner responsible to Plaintiff or to anyone else as a result of the incidents and occurrences described

in Plaintiff's complaint, any liability would be based solely upon a derivative form of liability not resulting from Third-Party Plaintiffs' conduct, but only from an obligation imposed upon Third-Party Plaintiffs by law; therefore, Third-Party Plaintiffs would be entitled to complete indemnity from Third-Party Defendants.

## THIRD CAUSE OF ACTION

### (Declaratory Relief)

### (Against Third-Party Defendants)

24.     Third-Party Plaintiffs reallege and incorporate by reference Paragraphs 1 through 23, inclusive, of this Third-Party Complaint as though fully set forth herein.

25.     There presently exists a controversy between Third-Party Plaintiffs and Third-Party Defendants in that Third-Party Plaintiffs contend that if it is found that Plaintiff sustained damages for the reasons alleged in the operative complaint, which Plaintiff contends are recoverable pursuant to [the written limited partnership agreement (attached hereto as Ex. "A" and incorporated by reference herein)], and Plaintiff is ultimately awarded judgment against Third-Party Plaintiffs, then Third-Party Plaintiffs are entitled to indemnification or contribution to recover over and against Third-Party Defendants, as a fiduciary and responsible party, in any amount of any judgment or judgments that may be entered against Third-Party Plaintiffs in the defense in the action, including attorney's fees, costs and expenses for the preparation and investigation; whereas Third-Party Defendants denies the contentions of the Third-Party Complaint and asserts that she has no obligation to Third-Party Plaintiffs under any circumstances.

26.     Accordingly, a declaration of this Court is necessary to determine the rights and obligations existing between the Third-Party Plaintiffs and Third-Party Defendants, and the same can be determined and declared in the present action thus avoiding circuitry of action of multiple suits.

/ / /

## PRAYER

WHEREFORE, Third-Party Plaintiffs pray for judgment against Third-Party Defendants as follows:

1.     For total and complete indemnity for any judgment rendered against Third-Party Plaintiffs;

2.     For judgment in a proportionate share from Third-Party Defendants;

3.     For a judicial determination that Third-Party Defendants was the legal cause of any injuries and damages sustained by Plaintiff and that Third-Party Defendants indemnify Third-Party Plaintiffs either completely or partially, for any sums of money which may be recovered against them by Plaintiff;

4.     For costs and expenses incurred in the defense of this matter and in bringing this Third-Party Complaint, including reasonable attorney's fees; and

5.     For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Third-Party Plaintiffs request a jury trial on all issues triable to a jury.

DATED:  April 13, 2012

LAW OFFICE OF BRETT K. SHAAD

By: _____

BRETT K. SHAAD, ESQ.
Attorney for Third-Party Plaintiffs

**EXHIBIT A**

# EXHIBIT A

# ORIGINAL COMPLAINT

**EXHIBIT A**

1   Louis E. Kempinsky (State Bar No. 90068)
    *lek@vrmlaw.com*
2   VALENSI ROSE, PLC
    1888 Century Park East, Suite 1100
3   Los Angeles, CA 90067
    Telephone: (310) 277-8011
4   Facsimile: (310) 601-7009

5   Attorneys for Plaintiff
    David R. Hilty

6

7                  UNITED STATES DISTRICT COURT

8                  CENTRAL DISTRICT OF CALIFORNIA

9                         WESTERN DIVISION

10  DAVID R. HILTY, individually, and
    derivatively on behalf of GEISHA HOUSE,        Case No. **CV12-02089** 佗
11  LLC, a California limited liability company,
    and GEISHA SANTA ANA, LLC, a                   VERIFIED COMPLAINT FOR:
12  California limited liability company,
                                                   (1)  SECURITIES FRAUD;
13                       Plaintiff,                 (2)  FRAUD;
                                                   (3)  BREACH OF FIDUCIARY
14                  vs.                                  DUTY;
                                                   (4)  CIVIL CONSPIRACY;
15  LONNIE MOORE, an individual; MICHAEL           (5)  UNJUST ENRICHMENT;
    ROBERT CARRI a/k/a MICHAEL ROBERT             (6)  ACCOUNTING;
16  MALIN a/k/a MIKE BOOGIE a/k/a MIKE            (7)  UNFAIR COMPETITION (Cal.
    BOOGIE MALIN, an individual; 2HYPE                 Bus. & Prof. Code § 17200, *et*
17  PRODUCTIONS, INC., a California                    *seq.*); and
    corporation; LTM CONSULTING, INC., a          (8)  APPOINTMENT OF A
18  California corporation; MOORE & MALIN              RECEIVER
    ENTERPRISES, LLC.; a California limited
19  liability company; JAMES MCDONALD, an         DEMAND FOR JURY TRIAL
    individual; ROBERT PAU, an individual; and
20  DOES 1 through 10, inclusive,

21                       Defendants,

22                  – and –

23  GEISHA HOUSE, LLC, a California limited
    liability company, and GEISHA SANTA
24  ANA, LLC, a California limited liability
    company,
25
                    Nominal Defendants.
26

27

28
    312757.1                        - 1 -

80866-001

Louis E. Kempinsky (State Bar No. 90068)
lek@vrmlaw.com
VALENSI ROSE, PLC
1888 Century Park East, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 277-8011
Facsimile: (310) 601-7009

Attorneys for Plaintiff
David R. Hilty

BY: ___

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

12 MAR 12 PM 9: 56

FILED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

DAVID R. HILTY, individually, and
derivatively on behalf of GEISHA HOUSE,
LLC, a California limited liability company,
and GEISHA SANTA ANA, LLC, a
California limited liability company,

        Plaintiff,

        vs.

LONNIE MOORE, an individual; MICHAEL
ROBERT CARRI a/k/a MICHAEL ROBERT
MALIN a/k/a MIKE BOOGIE a/k/a MIKE
BOOGIE MALIN, an individual; 2HYPE
PRODUCTIONS, INC., a California
corporation; LTM CONSULTING, INC., a
California corporation; MOORE & MALIN
ENTERPRISES, LLC.; a California limited
liability company; JAMES MCDONALD, an
individual; ROBERT PAU, an individual; and
DOES 1 through 10, inclusive,

        Defendants,

        – and –

GEISHA HOUSE, LLC, a California limited
liability company, and GEISHA SANTA
ANA, LLC, a California limited liability
company,

        Nominal Defendants.

Case No. **CV12- 02089** JCb

**VERIFIED COMPLAINT FOR:**

**(1)** SECURITIES FRAUD;
**(2)** FRAUD;
**(3)** BREACH OF FIDUCIARY
     DUTY;
**(4)** CIVIL CONSPIRACY;
**(5)** UNJUST ENRICHMENT;
**(6)** ACCOUNTING;
**(7)** UNFAIR COMPETITION (Cal.
     Bus. & Prof. Code § 17200, *et
     seq.*); and
**(8)** APPOINTMENT OF A
     RECEIVER

**DEMAND FOR JURY TRIAL**

312757.1

– 1 –

1    Plaintiff David R. Hilty ("Hilty"), individually, and derivatively on behalf of

2  Geisha House, LLC ("Geisha L.A.") and Geisha Santa Ana, LLC ("Geisha Santa Ana"),

3  hereby complains against the defendants named herein (collectively, "Defendants") and

4  alleges as follows:

5                              **JURISDICTION**

6    1.    The claims asserted herein arise under §§ 10(b) and 20(a) of the Securities

7  Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78n(a), and 78t(a), and

8  Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder, and under California law.

9  In connection with the acts, conduct and other wrongs complained of herein, defendants,

10  directly and/or indirectly, used the means and instrumentalities of interstate commerce

11  and the United States mail.  This Court has subject matter jurisdiction pursuant to § 27

12  of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. §§ 1331 and 1337.  This

13  Court also has supplemental jurisdiction over the state law claims asserted herein

14  pursuant to 28 U.S.C. § 1367.

15    2.    This action is not a collusive one to confer jurisdiction on a court of the

16  United States which it would not otherwise have.

17                         **NATURE OF THE ACTION**

18    3.    This action arises from the long-running, systematic, and pervasive course

19  of fraud, waste, mismanagement, embezzlement, and diversion of corporate assets and

20  opportunities that, from the business's inception, has characterized the management of

21  The Dolce Group, a conglomerate of restaurants, clubs, and hospitality consulting

22  services formed and operated through several operating entities (the "Dolce Group

23  Entities"), by defendants Lonnie Moore ("Moore") and Michael Robert Carri a/k/a

24  Michael Robert Malin a/k/a Mike Boogie a/k/a Mike Boogie Malin ("Malin").

25    4.    Since founding The Dolce Group in 2003, Moore and Malin have used the

26  Dolce Group Entities as their personal piggybank, siphoning off to themselves millions

27  of dollars in corporate funds, to the detriment of the entities and their other investors.

28
   312757.1                              - 2 -

1 | Through this and other intentional misconduct, along with their gross negligence and
2 | incompetence in running the Dolce Group Entities, Moore and Malin have run several
3 | of those entities into the ground.

4 |      5.       Plaintiff Hilty is part of the unfortunate group of investors induced by
5 | Moore and Malin to invest in Dolce Group Entities. Hilty is, and, as relevant hereto,
6 | has been, a member of three of the Dolce Group Entities, Geisha L.A., Geisha Santa
7 | Ana, and Dolce Group Atlanta, LLC ("Dolce Atlanta"), investing approximately $1
8 | million in the aggregate in those entities.

9 |      6.       Since Hilty first started investing in Dolce Group Entities in 2004, he has
10 | received only minimal distributions on account of his investments, Geisha Santa Ana
11 | became unable to continue operating the branch of Geisha House it was formed to open
12 | in Orange County, and Hilty has been told that his investment in Dolce Atlanta is
13 | worthless, with each of the restaurants in Atlanta opened by that entity recently closing.

14 |      7.       Hilty brings this lawsuit on behalf of himself, in his individual capacity, to
15 | recover for the injuries suffered by him directly, as a result of his investments in Dolce
16 | Group Entities, as well as to recover for the frauds, breaches of fiduciary duties, and
17 | other wrongs committed against him directly by Moore, Malin, and other Defendants
18 | named herein, with whom Moore and Malin conspired in their scheme to defraud
19 | investors and loot the Dolce Group Entities.

20 |      8.       Hilty also brings this lawsuit in a derivative capacity, on behalf of nominal
21 | defendants Geisha L.A. and Geisha Santa Ana, in the right and for the benefit of those
22 | entities and their members. Hilty has standing to bring the derivative claims he asserts,
23 | and any requirement of a pre-suit demand upon the entities is excused, for reasons set
24 | forth in more detail below, including, without limitation, that, in light of the facts
25 | alleged herein, Moore and Malin, as managing members of the entities, cannot
26 | reasonably be expected to take appropriate corrective action, and any demand on them
27 | to do so would manifestly be futile.

28 |

9.      Notwithstanding the manifest futility of doing so, Hilty is, pursuant to Georgia limited liability company law, in conjunction with the filing of this lawsuit, making demand upon Moore and Malin, as managing members of Dolce Atlanta, that Dolce Atlanta commence litigation to, among other things, uncover and obtain recovery for the frauds, breaches of fiduciary duties, gross negligence, and other wrongs committed by Moore, Malin, and their co-conspirators against Dolce Atlanta and its investors.

10.      Hilty intends to amend this Complaint to assert derivative claims on behalf of Dolce Atlanta, if (as expected) Moore and Malin refuse the demand made upon them, or if they fail to respond within the time allowed by law, or if to await such response would result in irreparable injury.

## THE PARTIES

11.      Plaintiff Hilty is, and at all times relevant hereto was, an individual domiciled in the State of New York.

12.      Nominal defendant Geisha L.A. is, and at all times relevant hereto was, a limited liability company organized and existing under the laws of the State of California, with its principal place of business in the State of California, County of Los Angeles. Hilty is, and at all times relevant hereto was, a member of Geisha L.A.

13.      Nominal defendant Geisha Santa Ana is, and at all times relevant hereto was, a limited liability company organized and existing under the laws of the State of California, with its principal place of business in the State of California, County of Los Angeles. Hilty is, and at all times relevant hereto was, a member of Geisha Santa Ana.

14.      On information and belief, defendant Moore is, and at all times relevant hereto was, an individual domiciled in the State of California, County of Los Angeles.

15.      On information and belief, defendant Malin is, and at all times relevant hereto was, an individual domiciled in the State of California, County of Los Angeles.

16. On information and belief, defendant 2HYPE Productions, Inc. ("2HYPE") is, and at all times relevant hereto was, a corporation organized and existing under the laws of the State of California, with its principal place of business in the State of California, County of Los Angeles.

17. On information and belief, defendant LTM Consulting, Inc. ("LTM") is, and at all times relevant hereto was, a corporation organized and existing under the laws of the State of California, with its principal place of business in the State of California, County of Los Angeles.

18. On information and belief, defendant Moore & Malin Enterprises, LLC ("MME") is, and at all times relevant hereto was, a limited liability company organized and existing under the laws of the State of California, with its principal place of business in the State of California, County of Los Angeles.

19. On information and belief, defendant Malin is the alter ego of defendants 2HYPE and MME, and is legally responsible for the debts and obligations of 2HYPE and MME in that, among other things: (a) Malin controls, dominates, manages, and operates 2HYPE and MME as his alter egos; (b) 2HYPE and MME have failed to comply with, or observe, the formalities of corporate formation and/or operation; (c) 2HYPE and MME have each operated as a mere shell or sham corporation without sufficient capital assets to meet their debts, obligations, or liabilities as they come due; (d) there was a commingling of assets between and among Malin, 2HYPE, and MME; and (e) the individuality of 2HYPE and MME is a sham and a fiction and should be disregarded, because to respect the corporate separateness of these entities would, under the circumstances, operate as an injustice.

20. On information and belief, defendant Moore is the alter ego of defendants LTM and MME, and is legally responsible for the debts and obligations of LTM and MME in that, among other things: (a) Moore controls, dominates, manages, and operates LTM and MME as his alter egos; (b) LTM and MME have failed to comply

- 5 -

with, or observe, the formalities of corporate formation and/or operation; (c) LTM and MME have each operated as a mere shell or sham corporation without sufficient capital assets to meet their debts, obligations or liabilities as they come due; (d) there was a commingling of assets between and among Moore, LTM, and MME; and (e) the individuality of LTM and MME is a sham and a fiction and should be disregarded, because to respect the corporate separateness of these entities would, under the circumstances, operate as an injustice.

21.     On information and belief, defendant James McDonald ("McDonald") is, and at all times relevant hereto was, an individual domiciled in the State of California, County of Los Angeles. McDonald is the Controller of The Dolce Group.

22.     On information and belief, defendant Robert Pau ("Pau," and collectively with Moore, Malin, and McDonald, the "Individual Defendants") is, and at all times relevant hereto was, an individual domiciled in the State of California, County of Los Angeles. Pau is the Director of Operations of The Dolce Group.

23.     Hilty is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names pursuant to Local Rule 19-1. On information and belief, each such fictitious defendant was in some way responsible for, participated in, or contributed to the matters and things of which Hilty complains herein, and in some fashion has legal responsibility therefor. When the true names and capacities of such defendants and their responsibility for, participation in, and/or contribution to the matters and things alleged herein are ascertained by Hilty, Hilty will seek leave to amend this Complaint to allege the same.

/ / /
/ / /
/ / /
/ / /

312757.1                                    - 6 -

## GENERAL ALLEGATIONS

### Moore And Malin Form The Dolce Group And, In Less Than A Decade, Run Several Restaurants And Clubs Into The Ground

24.     On information and belief, defendants Moore and Malin entered the hospitality business in Los Angeles in 2001, opening a tapas lounge on Santa Monica Boulevard called Belly.  On information and belief, Belly closed just a few short years later, in 2004.

25.     Belly's closing in 2004, just a few years after it opened, established the paradigm for ventures founded by Moore and Malin.  On information and belief, in the decade since Moore and Malin founded Belly, several other of their restaurant and club ventures have closed, and others have had to be sold off or otherwise disassociated with The Dolce Group, due to, among other things, Moore and Malin's fraud, mismanagement, and diversion to themselves of corporate assets and opportunities.

26.     On information and belief, Moore and Malin together formed The Dolce Group in 2003, opening their first venture under that umbrella, an Italian restaurant in Hollywood called Dolce Enoteca e Ristorante.

27.     On information and belief, The Dolce Group has, since 2003, been the sole or principal vehicle and/or branding, advertising, and/or marketing, and promotion platform through which Moore and Malin have solicited investments in, opened, promoted, and operated restaurant and club ventures.

28.     On information and belief, since 2003, approximately sixteen  restaurants and clubs have been opened under the Dolce Group umbrella, as follows:

   a.      three branches of Geisha House (the original in Hollywood and branches in Atlanta and Santa Ana);

   b.      four branches of Dolce Enoteca, an Italian restaurant;

312757.1

- 7 -

c.  a sister restaurant to the original Dolce Enoteca called Bella Cucina Italiana, which was also located in Hollywood and which was subsequently renovated and reconcepted in 2010 to become Angels and Kings, a rock and roll bar;

d.  Ten Pin Alley, a bowling alley and lounge in Atlanta;

e.  Les Deux, a nightclub in Hollywood;

f.  three branches of Ketchup, a modern diner brand;

g.  Rare 120° and Johnny Smalls, two restaurants at the Hard Rock Hotel & Casino in Las Vegas; and

h.  The Burgundy Room, a multipurpose venue in Miami.

29.  On information and belief, of the sixteen restaurant and club ventures described above, only four are still in business and affiliated with The Dolce Group: the Los Angeles branch of Geisha House ("Geisha House"); Angels and Kings; the Washington, D.C. branch of Ketchup; and Johnny Smalls). On information and belief, most of the other ventures have been closed entirely, and the others have been sold off or otherwise disassociated from The Dolce Group.

**Moore And Malin Obtain Millions Of Dollars From Passive Investors In The Dolce Group Entities, While Excluding Those Investors From The Entities' Management**

30.  Geisha L.A., Geisha Santa Ana, Dolce Atlanta, and, on information and belief, the other Dolce Group Entities, were formed as limited liability companies ("LLCs"), each designed to correspond to a single or at most a few specific restaurant or club projects. A major source of financing for these projects was the infusion of capital contributions to the respective entities from passive investors acquiring membership interests in the Dolce Group Entities ("LLC Interests").

31.  To induce investors to provide capital to the Dolce Group Entities (including Geisha L.A., Geisha Santa Ana, and Dolce Atlanta), Moore and Malin solicited investments through, among other means, offerings to members of the public

312757.1                                  - 8 -

1  LLC Interests ("Offerings"). In connection with each Offering, Moore and Malin
2  disseminated to members of the public and/or caused to be disseminated to members of
3  the public various documents and information concerning the Offering and the Dolce
4  Group Entity at issue, including, among other things, confidential business plans,
5  summaries and/or other memoranda concerning the Offering, and copies of the
6  subscription agreement and operating agreement for the entity (collectively, "Offering
7  Materials").

8     32.    In disseminating the Offering Materials and other documents and
9  information for the purpose of soliciting, from Hilty and other investors, investments in
10 the Dolce Group Entities (including Geisha L.A., Geisha Santa Ana, and Dolce Atlanta),
11 Moore and Malin directly and/or indirectly used the means and instrumentalities of
12 interstate commerce (including email and interstate telephone calls) and the United
13 States mail.

14    33.    Moore and Malin are, and at all times relevant hereto were, managing
15 members of the Geisha L.A., Geisha Santa Ana, Dolce Atlanta, and, on information and
16 belief, the other Dolce Group Entities ("Managing Members"). While a third person,
17 Shereene Arazm ("Arazm"), is also a managing member of Geisha L.A., Geisha Santa
18 Ana, and Dolce Atlanta, under those entities' operating agreements, Moore and Malin,
19 on information and belief, *de facto* controlled and dominated the management of those
20 entities.

21    34.    Hilty and, on information and belief, other members of Geisha L.A.,
22 Geisha Santa Ana, and Dolce Atlanta, besides Moore and Malin, are non-managing
23 members of their respective entities ("Non-Managing Members").

24    35.    Moore and Malin's positions as Managing Members of the Dolce Group
25 Entities provided them with the opportunity to, and they did in fact, control and
26 dominate the operations, activities, and finances of the Dolce Group Entities, to the
27 exclusion and detriment of both the Non-Managing Members and Arazm.

28

312757.1                              - 9 -

36.   On information and belief, over the years, Moore and Malin have obtained millions of dollars in capital contributions to the Dolce Group Entities from Non-Managing Members, all while excluding the Non-Managing Members from the management of the Dolce Group Entities and, in addition, using their position of superior influence and power to personally enrich themselves at the expense of the Dolce Group Entities and, in particular, the Non-Managing Members.

37.   On information and belief, The Dolce Group, from the beginning, was intended by Moore and Malin to be, and was in fact used by them as, a vehicle for personally enriching themselves at the expense of the Dolce Group Entities and their passive investors, the Non-Managing Members.

**Hilty Invests Approximately $1 Million In Dolce Group Entities, Becoming A Non-Managing Member Of Geisha L.A., Geisha Santa Ana, And Dolce Atlanta**

38.   In or around December 2003, Geisha L.A. commenced an Offering of LLC Interests in that entity, at the price of $50,000 per unit, with each unit representing a one percent (1%) membership interest in the entity.

39.   On or about December 15, 2004, Hilty acquired a one-half percent (0.5%) non-managing membership interest in Geisha L.A.

40.   Hilty paid $25,000 to acquire this membership interest in Geisha L.A., which was accomplished as part of a larger wire transfer made on or about November 29, 2004.

41.   Around mid-2005, Dolce Atlanta commenced an Offering of LLC Interests in that entity, at the price of $200,000 per unit, with each unit representing a two percent (2%) membership interest in the entity.

42.   On or about, January 5, 2007, Hilty acquired a nine-and-one-half percent (9.5%) membership interest in Dolce Atlanta.

43.     Hilty paid $950,000 to acquire this membership interest in Dolce Atlanta, which was accomplished as part of a larger wire transfer made on or about January 24, 2006.

44.     In or around March 2008, Geisha Santa Ana commenced an Offering of LLC Interests in that entity, at the price of $30,000 per unit, with each unit representing a one percent (1%) ownership interest in the entity.

45.     On or about January 20, 2009, Hilty acquired a five percent (5%) membership interest in Geisha Santa Ana.

46.     Hilty received this membership interest in Geisha Santa Ana as consideration for his previous, and continuing, investment in the Dolce Atlanta LLC Interests.

47.     Hilty's acquisitions of his interests in Geisha L.A., Dolce Atlanta, and Geisha Santa Ana are hereafter collectively referred to as the "Investments."

**From The Inception Of The Dolce Group, Moore, Malin, And Their Co-conspirators Engage In A Continuous Scheme To Loot The Dolce Group Entities And Their Investors, And They Otherwise Grossly Mismanage The Dolce Group Entities**

48.     On information and belief, since the time of, or shortly following the time of, the formation of The Dolce Group in 2003, Moore and Malin have been engaged in a continuous and systematic scheme and course of conduct (which scheme later came to include such co-conspirators as McDonald and Pau) to loot the Dolce Group Entities and defraud the investors in those entities, particularly the class of Non-Managing Members of the Dolce Group Entities (including, without limitation, Geisha L.A., Geisha Santa Ana, and Dolce Atlanta).

49.     On information and belief, Moore and Malin, individually, together, and with certain co-conspirators, including McDonald and Pau, created an off-the books "ledger" where they would keep track of the monies they diverted or misappropriated

1   from their restaurants and clubs. They would then divide those monies among
2   themselves and, in some cases, with their co-conspirators.

3       50.    On information and belief, Moore and Malin, individually, together, and
4   with certain co-conspirators, including McDonald and Pau, created and managed a
5   PayPal account through which they would collect monies from the sale of restaurant gift
6   cards, discount coupons, and other merchandise. Rather than deposit these monies into
7   proper restaurant accounts, Moore and Malin, with the assistance of their co-
8   conspirators, including McDonald, hid these monies from Hilty and their other investors
9   by falsifying accounting records and manipulating the books and ledgers of various
10  Dolce Group Entities. On information and belief, Moore and Malin spilt these monies
11  between themselves and, in some cases, with certain of their co-conspirators, by
12  depositing monies siphoned away from entities in which Hilty has an ownership interest
13  into individual accounts owned by Moore and Malin, as well as by their companies
14  LTM, 2HYPE and/or MME.

15      51.    On information and belief, Moore and Malin, individually, together, and
16  with certain co-conspirators, including McDonald and Pau, entered into unauthorized
17  and off-the-books side deals with multiple distributors and vendors to exclusively sell
18  certain products in their restaurants and clubs in exchange for a commission on sales
19  and/or a flat fee. For example, Moore and Malin, with the assistance and aid of their co-
20  conspirators, entered into exclusive distribution agreements with Fiji Water and Red
21  Bull, among other companies, whereby Moore and Malin agreed to sell only Fiji brand
22  bottled water, Red Bull energy drink, and other products on an exclusive basis in certain
23  of Moore and Malin's restaurants and clubs. In exchange for these exclusivity
24  arrangements, Fiji Water, Red Bull, and other companies would send rebate checks
25  payable to Malin's privately held company, 2HYPE, Moore's privately held company,
26  LTM, and/or to MME. Rather than deposit these rebate checks into the proper
27  restaurant accounts, Moore and Malin, with the assistance of McDonald and Pau, would
28

312757.1                           - 12 -

1   add these monies to their "ledger" and split the funds between themselves. Also, in

2   exchange for the exclusive right to distribute their products at Geisha House and other

3   venues owned in part by Hilty, various distributors gave Moore and Malin

4   complimentary airline tickets and all-expenses-paid trips and vacations. On information

5   and belief, Moore and Malin never accounted for these gifts on the company books.

6     52. On information and belief, Moore and Malin, individually, together, and

7   with certain co-conspirators, including McDonald and Pau, conducted similar off-the-

8   books schemes with respect to their automated teller machine ("ATM") vendors at their

9   various establishments. The fees that Moore and Malin collected from the banks with

10  which they contracted for ATM services were not properly deposited into the

11  restaurants' accounts that were maintained by McDonald, but rather were split between

12  Moore and Malin, their co-conspirators, and the companies they controlled, including

13  2HYPE, LTM, and MME.

14    53. On information and belief, Moore and Malin, individually, together, and

15  with certain co-conspirators, including McDonald and Pau, also diverted or

16  misappropriated money from Hilty and other investors in their restaurants and clubs by

17  pocketing cash and checks payable to them individually, or to their alter ego entities

18  2HYPE, LTM, and/or MME, or payable to "cash," which monies they collected from

19  various party promoters and film/video producers. Certain promoters agreed to pay

20  Moore and Malin and their co-conspirators a cut of the cover charge the restaurants and

21  clubs would charge patrons at the door. Similarly, certain producers agreed to pay

22  Moore and Malin and certain of their co-conspirators, including Pau, a location fee for

23  allowing the production to shoot video and/or film at the restaurants and clubs owned

24  and operated by Moore and Malin. Rather than deposit these monies from the

25  promoters and producers into the proper restaurant accounts, Moore and Malin

26  instructed other individuals, including McDonald and Pau, not to "ring up" certain

27

28

1  transactions, but instead to add these monies to their illegal "ledger," to be shared

2  between themselves and certain of their co-conspirators.

3      54.    On information and belief, Moore and Malin, individually, together, and

4  with certain co-conspirators, including McDonald and Pau, entered into unauthorized

5  barter transactions with multiple patrons, vendors, and distributors. Without getting

6  permission from Hilty or other investors, Moore and Malin would trade the services at

7  their restaurants and clubs (*e.g.*, free or discounted meals) for personal favors and gifts.

8  On at least one occasion, Moore and Malin agreed to provide American Airlines

9  representatives with free and discounted meals and drinks and restaurant gift certificates

10 in exchange for two (2) round trip, business-class tickets on American Airlines to any

11 American Airline destination in Europe. Rather than properly account for this

12 transaction in the restaurants' books (which were maintained and allegedly controlled by

13 McDonald), Moore and Malin, with the assistance of McDonald, used the airline tickets

14 for a personal vacation. Similarly, Moore and Malin agreed to host private events at the

15 Geisha House (and other locations partly owned by Hilty) for the benefit of their friends

16 and associates. On information and belief, Malin also donated services and assets of

17 Geisha L.A. to benefit his personal relationships. On information and belief, those

18 events and donations were not properly accounted for, thereby allowing Moore and

19 Malin to individually profit at the expense of Geisha L.A. and its investors, including

20 Hilty.

21      55.    On information and belief Moore, individually, together, and with certain

22 co-conspirators, agreed with the landlord of his residence to pay half of his monthly rent

23 with Dolce Group gift cards, which were redeemable at restaurants, such as Geisha

24 House, in which Hilty has a financial interest. Moore never reimbursed Hilty's

25 restaurants when the gift cards were tendered there in exchange for food and/or alcohol.

26 Similarly, Malin has made unauthorized charitable donations in the name of Geisha

27 House to advance his own personal goals.

28

56.   On information and belief, Moore and Malin, individually, together, and with certain co-conspirators in Los Angeles, Washington, D.C. and elsewhere, disguised many of these illicit and improper payments as "management fees" or "loans". By so classifying these payments, Moore and Malin also made it a point to classify these improper transactions as "loans" in some cases to avoid paying income taxes on these monies. This illicit scheme is not limited to Moore and Malin's contact with Hilty, but is part of a broader scheme that Moore and Malin have used at various restaurants and clubs they own and operate throughout the country. On information and belief, dozens of investors have been harmed by Moore and Malin's illegal conduct.

57.   On information and belief, and as described more fully herein, Moore and Malin used most, if not all, of the monies that they divested or misappropriated from Hilty and other investors with McDonald and Pau's assistance, as well as through their various illegal schemes, to support lavish personal lifestyles.

58.   Malin, Moore, McDonald and Pau's individual and collective misconduct has virtually destroyed all the value in these restaurants and clubs as they have caused the restaurants and clubs to incur enormous debts, they have accumulated multiple lawsuits amounting to hundreds of thousands of dollars in liability claims resulting in increased insurance premiums or loss of insurance altogether, and generated bad publicity for the restaurants and clubs, causing a significant decrease in business. For instance, following the highly publicized 2007 incident in which Moore was personally accused of sexually battering an intoxicated nineteen-year-old patron of one of the Dolce Group ventures, the reputation of the various Dolce Group Entities, including Geisha L.A., suffered dramatically. While Geisha House was significantly profitable before the media reported on Moore's alleged sexual tortious misconduct, as a result of the negative media publicity, the restaurant continued to lose revenue such that, on information and belief, it is no longer profitable.

59. On information and belief, Moore and Malin and certain of their employees, including Pau, have caused Geisha House to be sued for various alleged torts and breaches of contract. Patrons and former employees of Geisha House have sued recover damages for employment discrimination, sexual harassment, same sex harassment, wage and hour violations, and negligence, among other allegations. Moore and Malin's landlords have also sued and/or threatened to sue Moore and Malin and/or Geisha House for unpaid rent. Other lenders and vendors have sued Moore and Malin and Geisha House for unpaid bills, which should have properly been paid by McDonald. Accordingly, Moore, Malin, and Geisha House are in arrears to multiple creditors, causing serious solvency concerns for the restaurants.

60. On information and belief, one of Moore and Malin's response to these lawsuits and creditor demands is to hide their assets. Moore and Malin have moved some of their monies to offshore accounts, including to accounts and homes in Cook Islands. McDonald and Pau are aware of these off-shore accounts and hidden assets owned and/or controlled by Moore and Malin, along with the corporations they own and operate. Moore and Malin have moved money around to various corporations they control outside of the restaurant group, such as 2HYPE, LTM, and MME.

61. On information and belief, Moore and Malin, individually, together, and in connection with certain co-conspirators, including McDonald and Pau, have engaged in schemes designed to avoid paying income taxes and to shelter their assets from taxation, as well as from their creditors.

62. On information and belief, Moore and Malin, individually, together, and in connection with certain co-conspirators, including McDonald and Pau, failed to report sales tax earned in connection with the sale of gift cards and merchandise in connection with their restaurants.

63. On information and belief, Moore and Malin, individually, together, and in connection with certain co-conspirators, including McDonald and Pau, classified and/or

1  instructed others to classify certain income they earned as "loan proceeds" in order to
2  avoid having to pay income taxes on those monies.

3       64.    On information and belief, the foregoing, specifically enumerated acts and
4  instances of misconduct, while significant in breadth, degree, and continuous nature, are
5  but illustrative of an even broader and more pervasive course of fraud and misconduct
6  by the Defendants implicated herein, which course of fraud and misconduct has been a
7  hallmark of the management and operations of each of the Dolce Group Entities since
8  the time of, or shortly following the time of, the formation of The Dolce Group in 2003.

9       65.    Many, but not all, of the particulars of the Defendants' continuing course of
10  fraud and misconduct were specifically detailed in a complaint filed by Arazm on or
11  about August 2, 2011, against Moore, Malin, and other Defendants named herein, in the
12  action captioned *Arazm v. Malin, et al.*, Los Angeles Superior Court Case No. BC
13  466696 (the "Arazm Lawsuit").

14       66.    Initially, the Arazm Lawsuit was brought both on behalf of Arazm as an
15  individual and on behalf of Geisha L.A.  Subsequently, Arazm filed an amended
16  complaint, in which she brought claims solely on behalf of herself, as an individual, and
17  not on behalf of Geisha L.A.

18       67.    ·On information and belief, the claims brought on behalf of Geisha L.A.
19  were dropped at the insistence of Malin and Moore who maintained, notwithstanding
20  her titular position as a managing member, that Arazm lacked the requisite
21  authorization, which Moore and Malin refused to provide, to enable the lawsuit to be
22  brought on behalf of Geisha L.A.

23       **For Months, Hilty Tries Unsuccessfully To Obtain Access To The Books And**
24            **Records Of Geisha L.A., Geisha Santa Ana, and Dolce Atlanta**

25       68.    On or about August 15, 2011, shortly after he became aware of the Arazm
26  Lawsuit, Hilty, through his counsel, sent a letter to Moore and Malin, in their capacity
27  as managing members of Geisha L.A., Geisha Santa Ana, and Dolce Atlanta, in which

28

312757.1                           - 17 -

1  Hilty demanded to be provided with access to all books and records of those entities,
2  and also to be allowed to have performed an accounting of all financial activity of those
3  entities since their inception (the "Demand Letter").

4       69.    In the months following the sending of the Demand Letter, Hilty engaged
5  in numerous communications regarding his demand with one or more Dolce Group
6  representatives. In the course of those communications, Hilty, among other things,
7  reiterated his demand and specified its scope, even providing a detailed inventory of the
8  types and categories of documents requested.

9       70.    On a number of occasions in the course of those communications, Hilty
10  was told, among other things, that he would be provided with all documents and
11  information to which he was entitled as a member of the respective LLCs, subject only
12  to the preparation, and Hilty's execution, of a confidentiality agreement. Though Hilty
13  subsequently inquired on multiple occasions about the status of the confidentiality
14  agreement and requested that it be sent to him as soon as possible so that the inspection
15  process could commence, Hilty was never provided with either any confidentiality
16  agreement or any of the books and records he had requested to examine.

17       71.    To date, Moore and Malin have failed and refused to comply with Hilty's
18  requests made in the Demand Letter, and on numerous subsequent occasions, for access
19  to the books and records of Geisha L.A., Geisha Santa Ana, and Dolce Atlanta, and to
20  be allowed to have performed an accounting with respect to those entities. At this point,
21  there is no reasonable prospect of compliance with such demands, absent the entry of an
22  appropriate order of this Court.

23            **Hilty Has Standing To Bring The Derivative Claims He Asserts,**
24               **And Demand On The LLCs Is Excused As Futile**

25       72.    Hilty brings certain claims asserted herein in a derivative capacity, on
26  behalf of nominal defendants Geisha L.A. and Geisha Santa Ana, in the right and for the
27  benefit of those entities and their members. Hilty has standing to bring the derivative

28

312757.1                                    - 18 -

1  claims he asserts, pursuant to California Corporations Code section 17501(a), in that,

2  among other things, Hilty is a member of record of the respective entities and was so at

3  the times of the transactions of which Hilty complains.

4      73.    Hilty fairly and adequately represents the interests of the members of

5  Geisha L.A. and Geisha Santa Ana who are similarly situated in enforcing the rights of

6  those entities.

7      74.    Any requirement pursuant to California Corporations Code section

8  17501(a) that Hilty make a pursuit demand upon the managers of Geisha L.A. and

9  Geisha Santa Ana to obtain the actions Hilty desires is excused as futile. Any such

10  demand would manifestly be futile in that, among other things:

11          a.    Moore and Malin, as two of the three Managing Members of the

12  entities, who together dominate and control the management of the entities, have

13  demonstrated their unwillingness and/or inability to act in compliance with their

14  fiduciary obligations and/or to sue themselves or their co-conspirators for the acts,

15  misconduct, and violations of law complained of herein.

16          b.    Moore and Malin directly participated in, approved, and permitted

17  the wrongs alleged herein, and are therefore not disinterested parties.

18          c.    Moore and Malin cannot exercise independent objective judgment in

19  deciding whether to bring this action or whether to prosecute this action vigorously

20  because each of them participated personally in, and benefited personally from, the

21  wrongdoing alleged herein, and, thus, in order to prosecute this action, they would need

22  to sue themselves.

23          d.    Any suit by the current management of the entities to remedy these

24  wrongs would likely further expose Moore and Malin to liability and, thus, they are

25  hopelessly conflicted in making any supposedly independent determination whether to

26  sue themselves.

27

28

312757.1                                   - 19 -

1           e.     Moore and Malin's inability to exercise independent objective

2 judgment or to make an independent determination whether to sue themselves is

3 confirmed by, among other things: (i) their failure and refusal to comply with Hilty's

4 Demand Letter; and (ii) their demand that Arazm amend her complaint in the Arazm

5 Lawsuit to drop all claims brought on behalf of Geisha L.A. and to proceed solely in her

6 individual capacity, rather than on behalf of Geisha L.A.

7        75.     Prior to the filing of this Complaint, Hilty delivered a copy thereof to the

8 managers of Geisha L.A. and Geisha Santa Ana, including Moore and Malin.

9

10                      **FIRST CLAIM FOR RELIEF**
          (Securities Fraud – Exchange Act § 10(b) and Rule 10b-5)
11         (By Hilty, Individually, Against All Individual Defendants)

12       76.     Hilty refers to and incorporates herein by reference each and every

13 allegation contained in paragraphs 1 through 76, inclusive, as though fully set forth

14 herein.

15       77.     In connection with each of the Investments, Moore and Malin, directly and

16 indirectly, caused the transmission to Hilty of information and documents, including,

17 without limitation, Offering Materials. Such transmissions were effected by the use and

18 means of instrumentalities of interstate commerce and the mails, including email,

19 interstate telephone calls, and U.S. mail.

20       78.     In connection with each of the Investments, Moore and Malin suppressed

21 and concealed from Hilty material facts (the "Concealed Facts"), including, without

22 limitation, that Moore and Malin were, at all such times, engaged in a continuous and

23 systematic scheme and course of conduct to loot the Dolce Group Entities and defraud

24 the investors in those entities, particularly the class of Non-Managing Members of the

25 Dolce Group Entities (including, without limitation, Geisha L.A., Geisha Santa Ana,

26 and Dolce Atlanta), which included Hilty.

27

28

312757.1                         - 20 -

79. The Concealed Facts were never disclosed to Hilty by Moore or Malin, whether in the Offering Materials, or otherwise in connection with the Offerings, or otherwise in the course of Hilty's communications with Moore, Malin, and those acting on their behalf, relating to the Investments, or otherwise at any time prior to Hilty's decisions to make the Investments.

80. Moore and Malin were bound to disclose the Concealed Facts to Hilty in connection with his making of the Investments.

81. Moore and Malin concealed and suppressed the Concealed Facts with the intent to defraud Hilty and to induce him to make the Investments.

82. At the times Hilty made the Investments, he was unaware of the Concealed Facts, and he would not have made the Investments had he known of the Concealed Facts.

83. In reasonable and justifiable reliance on Moore and Malin's conduct, including, without limitation, their failure to disclose the Concealed Facts, Hilty was induced to make the Investments.

84. By virtue of the foregoing and other conduct, Moore and Malin, throughout the relevant period, individually and in concert with each other and others, directly and indirectly, by the use and means of instrumentalities of interstate commerce and the mails, engaged and participated in a continuous course of conduct designed to obtain millions of dollars of investments in Geisha L.A., Geisha Santa Ana, and Dolce Atlanta, with the ultimate goal of diverting those funds to their own personal benefit.

85. Defendants employed devices, schemes, and artifices to defraud while in possession of material, adverse non-public information, and they engaged in acts, practices, and a course of conduct that included the making of, and/or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about the Dolce Group Entities not misleading.

312757.1                                    - 21 -

86.     Moore and Malin, as Managing Members of Geisha L.A., Geisha Santa Ana, and Dolce Atlanta, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority, each of the defendants was able to and did control the conduct complained of herein and the content of the documents and information disseminated as part of the process of inducing the making of investments (including by Hilty) in Geisha L.A., Geisha Santa Ana, and Dolce Atlanta.

87.     Moore and Malin acted with scienter throughout the relevant period, in that they had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein. Moore and Malin constituted the senior management of the entities at issue, and were therefore directly responsible for the false and misleading statements and/or omissions disseminated to members of the public (including Hilty), through the Offering Materials and otherwise.

88.     Moore and Malin participated in a scheme to defraud with the purpose and effect of defrauding Hilty and other investors in Geisha L.A., Geisha Santa Ana, and Dolce Atlanta.

89.     By virtue of the foregoing conduct, Moore and Malin have violated § 10(b) of the Exchange, and Rule 10b-5 promulgated thereunder.

90.     As a proximate result of the foregoing conduct, Hilty has been damaged in an amount to be proven at trial, but in excess of $1,000,000.

91.     In committing the acts complained of herein, the Individual Defendants acted with oppression, fraud, and malice within the meaning of California Civil Code section 3294, entitling Hilty to the recovery of exemplary damages in an amount to be proven at trial.

1

2    **SECOND CLAIM FOR RELIEF**
     (Securities Fraud – Controlling Persons – Exchange Act § 20(a))
3    (By Hilty, Individually, Against All Individual Defendants)

4        92.    Hilty refers to and incorporates herein by reference each and every

5    allegation contained in paragraphs 1 through 92, inclusive, as though fully set forth

6    herein.

7        93.    Defendants, by virtue of their positions with Geisha L.A., Geisha Santa

8    Ana, Dolce Atlanta, and the Dolce Group, along with their specific acts alleged herein,

9    were, at the time of wrongs alleged herein, controlling persons of Geisha L.A., Geisha

10   Santa Ana, and Dolce Atlanta, within the meaning of § 20(a) of the Exchange Act.

11   They had the power and influence and exercised the same to cause the illegal conduct

12   and practices complained of herein.

13       94.    As a proximate result of the foregoing conduct, Hilty has been damaged in

14   an amount to be proven at trial, but in excess of $1,000,000.

15

16       **THIRD CLAIM FOR RELIEF**
     (Fraud)
17   (By Hilty, Individually, Against Defendants Moore and Malin)

18       95.    Hilty refers to and incorporates herein by reference each and every

19   allegation contained in paragraphs 1 through 95, inclusive, as though fully set forth

20   herein.

21       96.    By virtue of their conduct alleged herein, Moore and Malin fraudulently

22   induced Hilty to make the Investments, as a proximate result of which, Hilty has been

23   damaged in an amount to be proven at trial, but in excess of $1,000,000.

24       97.    In committing the acts complained of herein, the Individual Defendants

25   acted with oppression, fraud, and malice within the meaning of California Civil Code

26   section 3294, entitling Hilty to the recovery of exemplary damages in an amount to be

27   proven at trial.

28

312757.1                              - 23 -

**FOURTH CLAIM FOR RELIEF**
(Breach Of Fiduciary Duty)
(By Hilty, Individually, Against All Individual Defendants)

98.    Hilty refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 98, inclusive, as though fully set forth herein.

99.    As Managing Members of Geisha L.A., Geisha Santa Ana, and Dolce Atlanta, Moore and Malin owed and continue to owe to Hilty fiduciary duties of good faith, loyalty, and care.

100.   As Controller of the Dolce Group, McDonald owed and continues to owe to Hilty fiduciary duties of good faith, loyalty, and care.

101.   As Director of Operations of the Dolce Group, Pau owed and continues to owe to Hilty fiduciary duties of good faith, loyalty, and care.

102.   Moore, Malin, McDonald, and Pau (the Individual Defendants) have breached their fiduciary duties owed to Hilty by, among other things, engaging in conduct that constitutes fraud, gross negligence, intentional misconduct, and knowing violations of law.

103.   As a proximate result of the Individual Defendants' breaches of fiduciary duty, Hilty has been damaged in an amount to be proven at trial, but in excess of $1,000,000.

104.   In committing the acts complained of herein, the Individual Defendants acted with oppression, fraud, and malice within the meaning of California Civil Code section 3294, entitling Hilty to the recovery of exemplary damages in an amount to be proven at trial.

105.   Pursuant to the terms of the operating agreements governing Geisha L.A., Geisha Santa Ana, and Dolce Atlanta, Hilty is entitled to recover all of his reasonable

1  fees, costs and expenses incurred in enforcing his rights asserted herein, including,
2  without limitation, his reasonable attorneys' fees and expenses.

3

### FIFTH CLAIM FOR RELIEF
#### (Civil Conspiracy)
4
5  (By Hilty, Individually, Against All Individual Defendants, 2HYPE, LTM, and MME)

6       106.   Hilty refers to and incorporates herein by reference each and every
7  allegation contained in paragraphs 1 through 106, inclusive, as though fully set forth
8  herein.

9       107.   On information and belief, Moore, Malin, McDonald, and Pau (the
10  Individual Defendants) conspired collectively, and with and among one another and
11  2HYPE, LTM, and MME, to, and did in fact, embezzle, divert, and misappropriate
12  monies from Hilty and defraud Hilty and damage him through their breaches of
13  fiduciary duties to him and other misconduct alleged herein.

14       108.   As a proximate result of the Individual Defendants' conspiracy, Hilty has
15  been damaged in an amount to be proven at trial, but in excess of $1,000,000.

16       109.   In committing the acts complained of herein, the Individual Defendants
17  acted with oppression, fraud, and malice within the meaning of California Civil Code
18  section 3294, entitling Hilty to the recovery of exemplary damages in an amount to be
19  proven at trial.

20       110.   Pursuant to the terms of the operating agreements governing Geisha L.A.,
21  Geisha Santa Ana, and Dolce Atlanta, Hilty is entitled to recover all of his reasonable
22  fees, costs and expenses incurred in enforcing his rights asserted herein, including,
23  without limitation, his reasonable attorneys' fees and expenses.

24
25
26
27
28

312757.1                                -25-

## SIXTH CLAIM FOR RELIEF
### (Unjust Enrichment)
(By Hilty, Individually, Against All Individual Defendants, 2HYPE, LTM, and MME)

111.   Hilty refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 111, inclusive, as though fully set forth herein.

112.   As a result of their misconduct alleged herein, the Individual Defendants, 2HYPE, LTM, and MME have been unjustly enriched. Hilty is entitled to restitution of all amounts by which such defendants were unjustly enriched at Hilty's expense.

## SEVENTH CLAIM FOR RELIEF
### (Accounting)
(By Hilty, Individually, Against All Defendants)

113.   Hilty refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 113, inclusive, as though fully set forth herein.

114.   Information relating to the finances of Geisha L.A., Geisha Santa Ana, and Dolce Atlanta, the amounts improperly diverted from those entities, and the amounts to which Hilty may be entitled as a member of those entities, is non-public and is uniquely within the knowledge and control of Defendants, who have failed and refused to account to Hilty with respect to such matters. Such matters are presently unknown and cannot reasonably be ascertained without a full, complete, and retroactive accounting of the books and records of all of the Dolce Group Entities (including, but not limited to, Geisha L.A., Geisha Santa Ana, and Dolce Atlanta), along with, among others, those of 2HYPE, LTM, and MME. The full amount due and owing to Hilty can only be ascertained pursuant to a Court-ordered and supervised accounting of all of the income received by Moore, Malin, their co-conspirators, and the business entities controlled by or affiliated with them.

1   115.  Hilty has demanded that he be permitted to have an accounting performed

2  relating to the aforementioned matters and transactions, but Defendants have failed and

3  refused, and continue to fail and refuse, to permit such an accounting to be performed.

4   116.  Defendants owe Hilty an accounting as described herein, and are obligated

5  to pay Hilty all sums found to be due and owing him as a result of such accounting.

6

7  **EIGHTH CLAIM FOR RELIEF**
(Unfair Competition – Cal. Bus. & Prof. Code § 17200, *et seq.*)

8  (By Hilty, Individually, Against All Individual Defendants, 2HYPE, LTM, and MME)

9   117.  Hilty refers to and incorporates herein by reference each and every

10  allegation contained in paragraphs 1 through 117, inclusive, as though fully set forth

11  herein.

12   118.  The conduct of the Individual Defendants, 2HYPE, LTM, and MME

13  alleged herein constitutes an unlawful business act or practice under California's Unfair

14  Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL"), in that it

15  violates multiple provisions of law, including, without limitation: California's limited

16  liability company laws, including, without limitation, California Corporations Code §

17  17153; California's securities law, including, without limitation, California Corporations

18  Code §§ 25401-25403; and various provisions of the common law, including, without

19  limitation, the common law of fraud and fiduciary duty.

20   119.  The conduct of the Individual Defendants, 2HYPE, LTM, and MME

21  alleged herein constitutes an unfair business act or practice under the UCL in that,

22  among other things:

23   a.   such conduct offends public policy;

24   b.   such conduct is immoral, unethical, oppressive, unscrupulous, or

25  substantially injurious to members of the public, including, without limitation, members

26  of the public investing in Dolce Group Entities;

27

28

312757.1                              - 27 -

c.    such conduct harms members of the public, including, without limitation, members of the public investing in Dolce Group Entities, and such harm far outweighs any conceivable benefit or utility of such conduct; and

d.    such conduct violates the policy or spirit of, or threatens an incipient violation of, multiples provisions of law, including, without limitation: California's limited liability company laws, including, without limitation, California Corporations Code § 17153; California's securities law, including, without limitation, California Corporations Code §§ 25401-25403; and various provisions of the common law, including, without limitation, the common law of fraud and fiduciary duty.

120.    The conduct of the Individual Defendants, 2HYPE, LTM, and MME alleged herein constitutes a fraudulent business act or practice under the UCL in that, among other things, it is likely to deceive members of the public, including, without limitation, members of the public investing in Dolce Group Entities.

121.    The conduct of the Individual Defendants, 2HYPE, LTM, and MME alleged herein constitutes unfair competition under the UCL.

122.    As a result of the unfair competition of the Individual Defendants, 2HYPE, LTM, and MME, Hilty has suffered injury in fact and has lost money or property.

123.    Hilty is entitled to an order and judgment of this Court restoring to him all money or property acquired from him by the Individual Defendants, 2HYPE, LTM, and MME by means of their unfair competition.

124.    The unfair competition of the Individual Defendants, 2HYPE, LTM, and MME is ongoing and presents a continuing threat to members of the public. Unless enjoined, those Defendants will continue to engage in the unfair competition described herein. Under the UCL, this Court is empowered to, and should, grant preliminary and permanent injunctive relief against such acts and practices. Under the UCL, this Court is also empowered to, and should, appoint a receiver to assume control of the operations of all ongoing businesses of Defendants within this Court's jurisdiction.

### NINTH CLAIM FOR RELIEF
(Appointment Of A Receiver)
(By Hilty, Individually, Against Moore and Malin)

125.   Hilty refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 125, inclusive, as though fully set forth herein.

126.   As co-members of Geisha L.A., Hilty, Moore, and Malin, are joint owners of and/or have joint interests in Geisha L.A. and its property and operations and the proceeds thereof.

127.   The property of Geisha L.A. is in danger of being lost, removed, or materially injured by the ongoing misconduct of Moore, Malin, and their co-conspirators as described herein.

128.   Pursuant to California Code of Civil Procedure § 564(b)(1), Hilty is entitled to the appointment of a receiver to assume control of the operations of Geisha L.A.

### TENTH CLAIM FOR RELIEF
(Breach Of Fiduciary Duty)
(By Hilty, Derivatively on behalf of Geisha L.A. and Geisha Santa Ana, Against All Individual Defendants)

129.   Hilty refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 129, inclusive, as though fully set forth herein.

130.   As Managing Members of Geisha L.A. and Geisha Santa Ana, Moore and Malin owed and continue to owe to those entities fiduciary duties of good faith, loyalty, and care.

131.   As Controller of the Dolce Group, McDonald owed and continues to owe to Geisha L.A. and Geisha Santa Ana fiduciary duties of good faith, loyalty, and care.

- 29 -

312757.1

132.   As Director of Operations of the Dolce Group, Pau owed and continues to owe to Geisha L.A. and Geisha Santa Ana fiduciary duties of good faith, loyalty, and care.

133.   Moore, Malin, McDonald, and Pau have breached their fiduciary duties owed to Geisha L.A. and Geisha Santa Ana by, among other things, engaging in conduct that constitutes fraud, gross negligence, intentional misconduct, and knowing violations of law.

134.   As a proximate result of the Individual Defendants' breaches of fiduciary duty, Geisha L.A. and Geisha Santa Ana have been damaged in an amount to be proven at trial.

135.   In committing the acts complained of herein, the Individual Defendants acted with oppression, fraud, and malice within the meaning of California Civil Code section 3294, entitling Geisha L.A. and Geisha Santa Ana to the recovery of exemplary damages in an amount to be proven at trial.

136.   Pursuant to the terms of the operating agreements governing Geisha L.A. and Geisha Santa Ana, those entities are entitled to recover all of their reasonable fees, costs and expenses incurred in enforcing their rights asserted herein, including, without limitation, all reasonable attorneys' fees and expenses.

### ELEVENTH CLAIM FOR RELIEF
#### (Civil Conspiracy)
(By Hilty, Derivatively on behalf of Geisha L.A. and Geisha Santa Ana, Against All Individual Defendants, 2HYPE, LTM, and MME)

137.   Hilty refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 137, inclusive, as though fully set forth herein.

138.   On information and belief, Moore, Malin, McDonald, and Pau (the Individual Defendants) conspired collectively, and with and among one another and 2HYPE, LTM, and MME, to, and did in fact, embezzle, divert, and misappropriate

312757.1                          - 30 -

monies from Geisha L.A. and Geisha Santa Ana and defraud those entities and their investors and damage them through the breach of the Individual Defendants' fiduciary duties.

139.  As a proximate result of the Individual Defendants' conspiracy, Geisha L.A. and Geisha Santa Ana have been damaged in an amount to be proven at trial.

140.  In committing the acts complained of herein, the Individual Defendants acted with oppression, fraud, and malice within the meaning of California Civil Code section 3294, entitling Geisha L.A. and Geisha Santa Ana to the recovery of exemplary damages in an amount to be proven at trial.

141.  Pursuant to the terms of the operating agreements governing Geisha L.A. and Geisha Santa Ana, those entities are entitled to recover all of their reasonable fees, costs and expenses incurred in enforcing their rights asserted herein, including, without limitation, all reasonable attorneys' fees and expenses.

### TWELFTH CLAIM FOR RELIEF
#### (Unjust Enrichment)
(By Hilty, Derivatively on behalf of Geisha L.A. and Geisha Santa Ana, Against All Individual Defendants, 2HYPE, LTM, and MME)

142.  Hilty refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 142, inclusive, as though fully set forth herein.

143.  As a result of their misconduct alleged herein, the Individual Defendants, 2HYPE, LTM, and MME have been unjustly enriched.  Geisha L.A. and Geisha Santa Ana are entitled to restitution of all amounts by which such defendants were unjustly enriched at the expense of Geisha L.A. and Geisha Santa Ana.

### THIRTEENTH CLAIM FOR RELIEF
(Unfair Competition – Cal. Bus. & Prof. Code § 17200, *et seq.*)
(By Hilty, Derivatively on behalf of Geisha L.A. and Geisha Santa Ana,
Against All Individual Defendants, 2HYPE, LTM, and MME)

144. Hilty refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 144, inclusive, as though fully set forth herein.

145. The conduct of the Individual Defendants, 2HYPE, LTM, and MME alleged herein constitutes an unlawful business act or practice under the UCL, in that it violates multiple provisions of law, including, without limitation: California's limited liability company laws, including, without limitation, California Corporations Code § 17153; California's securities law, including, without limitation, California Corporations Code §§ 25401-25403; and various provisions of the common law, including, without limitation, the common law of fraud and fiduciary duty.

146. The conduct of the Individual Defendants, 2HYPE, LTM, and MME alleged herein constitutes an unfair business act or practice under the UCL in that, among other things:

       a.    such conduct offends public policy;

       b.    such conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to members of the public, including, without limitation, members of the public investing in Dolce Group Entities;

       c.    such conduct harms members of the public, including, without limitation, members of the public investing in Dolce Group Entities, and such harm far outweighs any conceivable benefit or utility of such conduct; and

       d.    such conduct violates the policy or spirit of, or threatens an incipient violation of, multiples provisions of law, including, without limitation: California's limited liability company laws, including, without limitation, California Corporations Code § 17153; California's securities law, including, without limitation, California

1  Corporations Code §§ 25401-25403; and various provisions of the common law,

2  including, without limitation, the common law of fraud and fiduciary duty.

3       147.  The conduct of the Individual Defendants, 2HYPE, LTM, and MME

4  alleged herein constitutes a fraudulent business act or practice under the UCL in that,

5  among other things, it is likely to deceive members of the public, including, without

6  limitation, members of the public investing in Dolce Group Entities.

7       148.  The conduct of the Individual Defendants, 2HYPE, LTM, and MME

8  alleged herein constitutes unfair competition under the UCL.

9       149.  As a result of the unfair competition of the Individual Defendants, 2HYPE,

10  LTM, and MME, Geisha L.A. and Geisha Santa Ana have suffered injury in fact and

11  have lost money or property.

12       150.  Geisha L.A. and Geisha Santa Ana are entitled to an order and judgment of

13  this Court restoring to them all money or property acquired from them by the Individual

14  Defendants, 2HYPE, LTM, and MME by means of their unfair competition.

15       151.  The unfair competition of the Individual Defendants, 2HYPE, LTM, and

16  MME is ongoing and presents a continuing threat to members of the public.  Unless

17  enjoined, those Defendants will continue to engage in the unfair competition described

18  herein.  Under the UCL, this Court is empowered to, and should, grant preliminary and

19  permanent injunctive relief against such acts and practices.  Under the UCL, this Court

20  is also empowered to, and should, appoint a receiver to assume control of the operations

21  of all ongoing businesses of Defendants within this Court's jurisdiction.

22

23       **WHEREFORE**, Hilty prays for the following relief:

24       <u>**ON THE FIRST AND SECOND CLAIMS FOR RELIEF**</u>

25  Hilty's damages in an amount to be proven at trial, but in excess of $1,000,000.

26

27

28

312757.1                                    - 33 -

## ON THE THIRD, FOURTH, AND FIFTH CLAIM FOR RELIEF

A.    Hilty's damages in an amount to be proven at trial, but in excess of $1,000,000.

B.    Exemplary damages in an amount to be proven at trial.

## ON THE SIXTH CLAIM FOR RELIEF

Restitution to Hilty of all amounts by which the Individual Defendants, 2HYPE, LTM, and MME have been unjustly enriched at Hilty's expense.

## ON THE SEVENTH CLAIM FOR RELIEF

An accounting of Defendants' books and records as set forth herein, and recovery by Hilty of the amounts found to be due and owing him as a result of the accounting.

## ON THE EIGHTH CLAIM FOR RELIEF

A.    Restitution to Hilty of all money or property acquired from him by the Individual Defendants, 2HYPE, LTM, and MME by means of unfair competition;

B.    Preliminary and permanent injunctive relief against the unfair competition of the Individual Defendants, 2HYPE, LTM, and MME; and

C.    Appointment of a receiver to assume control of the operations of all ongoing businesses of Defendants within this Court's jurisdiction.

## ON THE NINTH CLAIM FOR RELIEF

Appointment of a receiver to assume control of the operations of Geisha L.A.

## ON THE TENTH CLAIM FOR RELIEF

A.    Geisha L.A. and Geisha Santa Ana's damages in an amount to be proven at trial.

B.    Exemplary damages in an amount to be proven at trial.

## ON THE ELEVENTH CLAIM FOR RELIEF

A.    Geisha L.A. and Geisha Santa Ana's damages in an amount to be proven at trial.

B.    Exemplary damages in an amount to be proven at trial.

## ON THE TWELF CLAIM FOR RELIEF

Restitution to Geisha L.A. and Geisha Santa Ana of all amounts by which the Individual Defendants, 2HYPE, LTM, and MME have been unjustly enriched at the expense of Geisha L.A. and Geisha Santa Ana.

## ON THE THIRTEENTH CLAIM FOR RELIEF

A.    Restitution to Geisha L.A. and Geisha Santa Ana of all money or property acquired from them by the Individual Defendants, 2HYPE, LTM, and MME by means of unfair competition;

B.    Preliminary and permanent injunctive relief against the unfair competition of the Individual Defendants, 2HYPE, LTM, and MME; and

C.    Appointment of a receiver to assume control of the operations of all ongoing businesses of Defendants within this Court's jurisdiction.

## ON ALL CLAIMS FOR RELIEF

A.    Interest at the maximum legal rate;

B.    Attorneys' fees, costs, and expenses as permitted by law, equity or contract; and

C.    Such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Hilty hereby demands a trial by jury of all issues so triable.

Date: March 9, 2012

VALENSI ROSE, PLC

By: _Louis E. Kempinsky_
Louis E. Kempinsky
Attorneys for Plaintiff David R. Hilty

312757.1

- 35 -

## VERIFICATION

I have read the foregoing VERIFIED COMPLAINT FOR: (1) SECURITIES FRAUD; (2) FRAUD; (3) BREACH OF FIDUCIARY DUTY; (4) CIVIL CONSPIRACY; (5) UNJUST ENRICHMENT; (6) ACCOUNTING; (7) UNFAIR COMPETITION; AND (8) APPOINTMENT OF A RECEIVER ("COMPLAINT") and know its contents.

I am a party to this action and the matters stated in the foregoing Complaint are true based on my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 12, 2012, at New York, New York.

DAVID R. HILTY
Print Name of Signatory

Signature

312757.1